Lionel Horacio **BUITRON** and Juan Guerra Ramirez, Appellants,

v.

The **STATE** of Texas, Appellee.

No. 49098.

Court of Criminal Appeals of Texas.

Feb. 26, 1975.

Rehearing Denied March 19, 1975.

**468**

John J. Pichinson, Corpus Christi, for appellants.

Wiley L. Cheatham, Dist. Atty., Cuero, Jim D. Vollers, State's Atty. and David S. McAngus, Asst. State's Atty., Austin, for the State.

## OPINION

DALLY, Commissioner.

The appellants appeal from convictions for the possession of marihuana; the punishment assessed for each appellant is imprisonment for ten years.[1] The appellants urge that evidence obtained by an unlawful search and seizure was erroneously admitted in evidence and that the State prejudiced them by bringing into the courtroom in the jury's presence the 780 pounds of marihuana found in appellants' possession. The appellant Ramirez urges that the evidence was insufficient to support his conviction.

We will first consider the appellants' contention that the marihuana was obtained by an unlawful warrantless search and seizure made in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States. At approximately 11:00 a.m., August 3rd, 1973, Department of Public Safety Narcotics Agent Hector Sanchez, while in his office in Corpus Christi, received a telephone call from an unidentified informer who had previously given information which had proved to be accurate and which had led to convictions. Agent Sanchez was told by the informer that he had overheard appellant Buitron say that later that afternoon he and Arturo Mireles would deliver a large quantity of marihuana from Robstown to the Goliad Inn in Goliad for a buyer from South Carolina. The marihuana was to be transported in a pickup truck

---

1. On original submission this case was dismissed in a per curiam opinion because the judgment in the record assessed an indefinite punishment. A supplemental transcript has now been filed which includes a nunc pro tunc judgment assessing a definite punishment. The per curiam opinion is withdrawn, and the appeals will be considered on the merits.

with a camper shell. Mireles, appellant Buitron, and others were to be registered at the Goliad Inn in Mireles' middle name, De los Santos. Agent Sanchez knew Mireles by sight from former narcotics investigations and knew that both Mireles and the appellant Buitron had a reputation for being in the narcotics traffic.

Agent Sanchez with other officers traveled seventy miles from Corpus Christi to Goliad and commenced a surveillance of the Goliad Inn at approximately 12:30 p.m. At the Inn they saw only one pickup truck; it was red and white with a camper shell over the back deck, and the officers found it was registered in the name of a man residing in Robstown, the city from where the marihuana was to come.

At 2:00 p.m., Allen Tittle, Agent Sanchez's partner who had remained in Corpus Christi, received a call from the same informer who said: "Tell Hector (Sanchez) I think the load is on the way." Tittle transmitted this information to Sanchez by radio and then Tittle drove to Goliad. At 3:00 p.m., Sanchez saw Mireles arrive at the Goliad Inn in a white pickup truck. Mireles was accompanied by two other men, then unknown to the agents, but later identified as appellant Ramirez and Danny Joel Earley. The appellant Ramirez was driving; he parked the white pickup truck near the red and white pickup truck. The officers were unable to obtain the name of the registered owner of the white pickup during the time of the surveillance.

Mireles entered room No. 104, the room which was the nearest to the red and white pickup truck. He remained in the room a few minutes; then he returned to the white pickup truck and drove north toward Victoria. Shortly thereafter appellant Buitron also came from room No. 104 and also drove the red and white pickup truck north toward Victoria.

Both trucks stopped at a point beside the road approximately three miles north of Goliad. Agent Sanchez and other officers in radio communication with each other kept the pickup trucks under surveillance until they were stopped beside the road. Agent Sanchez and other officers saw Earley handing to Mireles a package approximately 6 inches by 12 inches in size and the appellant Ramirez taking a spare tire from the white pickup truck. That tire was later found in the back of the red and white pickup truck. Earley and the appellant Buitron got into the red and white pickup truck and drove north; Mireles and appellant Ramirez got into the white pickup and drove south back toward the Goliad Inn.

Agent Sanchez, who was conducting the surveillance in plain clothes, then called the Department of Public Safety dispatcher in Victoria by radio and asked that uniformed officers stop the red and white pickup truck and search it for narcotics. Sanchez gave the dispatcher a specific description and the license number of the red and white pickup truck. While Agent Sanchez observed, the truck was stopped by Officer Havrda. Havrda testified there was a strong odor of marihuana around the truck as he approached it to arrest Earley and appellant Buitron. Havrda took the keys from the ignition switch and opened the camper lid. He found a large amount of marihuana shaped into bricks or "kilos," and he found some marihuana in duffel bags. Sanchez then approached the scene and inspected the driver's license of Earley and Buitron. Earley's driver's license had been issued in South Carolina. Agent Sanchez then called Agent Tittle on the radio, told him that the marihuana had been found, and ordered him to arrest Mireles and appellant Ramirez who had gone back toward the Goliad Inn in the white pickup truck.

Agent Tittle awaited the return of the white pickup truck at the Goliad Inn. At the motel office he found out that room No. 104 was registered in the name of De los Santos. He went to the room and was admitted by Mireles' wife, Adelfina. He placed the appellants Ramirez, Mireles, and Adelfina Mireles under arrest. In Adelfi-

na Mireles' purse he found a pistol and approximately $14,000 wrapped in paper.

Goliad Chief Deputy Sheriff Wayne Mills testified that when Agent Sanchez first reached Goliad he, Mills, tried to find the only two magistrates who resided in the county. The Justice of the Peace was in the hospital in Victoria, and the County Judge was not available until he came to his offices between 5:00 and 5:30 p.m. The appellants had then been arrested.

■ We hold that the officers had probable cause to search the red and white pickup truck, and the evidence was properly admitted. Agent Sanchez was told by an informer who had previously proven reliable that he had overheard appellant Buitron discussing the sale and the details of the delivery of a large quantity of marihuana. The subsequent events observed by the officers during their surveillance corroborated the information received from the informer. Agent Sanchez knew Mireles on sight and saw him with a pickup truck at the precise place the informer had said. See Anderson v. State, 467 S.W.2d 434 (Tex.Cr.App.1971); Rangel v. State, 444 S.W.2d 924 (Tex.Cr.App.1969). The appellants and the others were observed exchanging trucks, a package, and a spare tire which, although later determined not to contain narcotics, Agent Sanchez believed at the time contained cocaine or heroin. Everything observed was as the informer had said and was consistent with a sale of a large amount of marihuana. It was a reasonable deduction by the officers that the informer was also correct about the marihuana in the pickup truck. Almendarez v. State, 460 S.W.2d 921 (Tex. Cr.App.1970). On the basis of the independent observations of the officers coupled with the information from the reliable informer, there was probable cause to search the red and white pickup truck and the appellant Buitron. Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959); Rivas v. State, 506 S.W.2d 233 (Tex.Cr.App.1972); Kwant v. State,

472 S.W.2d 781 (Tex.Cr.App.1971); Almendarez v. State, supra.

■ The appellant contends however that once the red and white pickup was stopped by the officers and the occupants secured, there should have been no search until such time as a magistrate could be located and a search warrant obtained. An exception to the requirement for a search warrant is the search of an automobile under exigent circumstances. Chambers v. Maroney, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed.2d 1879 (1949); Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). Here the pickup truck was under the complete control of the appellants until stopped by the officers. The probable cause to search was reinforced by observation of the exchange of the package wrapped in paper and the spare tire. The immediate search of the truck stopped on the highway was constitutionally permissible. Chambers v. Maroney, supra; Coyne v. State, 485 S.W.2d 917 (Tex.Cr. App.1972). It would have been a greater intrusion, and unnecessary, to hold the occupants until either of the two magistrates in the county could be found. There was no error in the search as conducted. Chambers v. Maroney, supra; Harris v. State, 486 S.W.2d 88 (Tex.Cr.App.1972); Coyne v. State, supra. Compare Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); Stoddard v. State, 475 S.W.2d 744 (Tex.Cr.App.1972).

The appellants rely on the case of United States v. Garay, 477 F.2d 1306 (5th Cir. 1973), to show that the officers should have held the truck until a search warrant was obtained. Without intimating that we think the decision in that case was correct, it may be distinguished. That case dealt with luggage on an airplane which when seized was not in possession of the defendants, and the court there said that there were no exigent circumstances justifying a search when the luggage, although literally mobile, was bound for only one destination,

Detroit. If the search warrant was not timely obtained at the point of departure, it could easily have been used upon arrival. The luggage was capable of being within the officers' control at all times. Here the truck was leaving the county, driven by the participants in an evidently completed sale of marihuana, and was certainly not within the officers' control.

The ground of error is overruled.

The appellants next complain in the second ground of error that there was no evidence adduced at trial which showed appellant Ramirez's exercise of control or custody over the contraband. It was shown, as stated above, that appellant Ramirez was driving the white pickup truck when Earley, Mireles, and he first came to the Goliad Inn. He was among those who went to the spot beside the road where the package was given to Mireles by Earley, and where he (Ramirez) was seen taking the spare tire from the white pickup truck which tire was later found in the red and white pickup truck with the marihuana. Both Agent Sanchez and Officer Havdra testified that the marihuana smelled so as to be easily noticed outside the truck. Appellant Ramirez then proceeded back to the room at the Goliad Inn with Mireles, where he was arrested with Mr. and Mrs. Mireles and $14,000 in cash. The trial court charged on the law of principals and circumstantial evidence.

 When exclusive control is not shown, there need be some independent facts linking the appellant to the contraband. E.g. Barnes v. State, 504 S.W.2d 450 (Tex.Cr.App.1974). Mere presence of the appellant is not enough. E.g. Culmore v. State, 447 S.W.2d 915 (Tex.Cr.App. 1969). However, surrounding facts and circumstances may be used to show that the appellant jointly possessed the contraband. E.g. Powell v. State, 502 S.W.2d 705 (Tex.Cr.App.1973); Lewis v. State, 502 S.W.2d 699 (Tex.Cr.App.1973). We find that such knowledge and possession by the appellant Ramirez was shown under these facts.

The ground of error is overruled.

In the third and final ground of error, the appellants maintain that the trial court erred in allowing all 780 pounds of marihuana to be placed in evidence and brought into the courtroom where the appellants offered to stipulate as to its weight and to the fact of it being marihuana. They claimed that the prejudicial effect outweighed the probative value of the evidence so as to make it inadmissible.

The State may agree or not to offers for stipulation of evidence as it sees fit. Rodriquez v. State, 373 S.W.2d 258 (Tex.Cr.App.1963); Thompson v. State, 170 Tex.Cr.R. 258, 339 S.W.2d 209 (1960). Certainly the fact that the appellants offered to stipulate concerning the very contraband for which the appellants were being tried does not preclude the State from introducing such evidence. Bryers v. State, 480 S.W.2d 712 (Tex.Cr.App.1972).

The ground of error is overruled.

The judgment is affirmed.

Opinion approved by the Court.