Roger GRANT, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–81–0029–CR.

Court of Appeals of Texas, Amarillo.

Dec. 8, 1981.

E. Dean Roper, Amarillo, for appellant.

Tom Curtis, Dist. Atty., Steve Schiwetz and James L. Turner, Asst. Dist. Attys., Amarillo, for appellee.

Before REYNOLDS, C. J., and COUNTISS and BOYD, JJ.

REYNOLDS, Chief Justice.

Appellant Roger Grant seeks the reversal of his conviction for unlawful possession of a firearm by a felon, accompanied by punishment at confinement for ten years, on the sole ground that the firearm was obtained as the result of an illegal search and seizure. Concluding that the warrantless search for and the seizure of the firearm were authorized, we affirm.

In the light most favorable to the jury's conviction, the evidence shows that appellant had been convicted of a felony and, thereafter, had in his possession a firearm, a .38 caliber Rossi pistol, while operating an automobile. *See* Tex.Penal Code § 46.05 (Vernon 1974). That the evidence is *per se* sufficient to sustain the conviction is not challenged. What the appellant does challenge is the admission of the pistol in evidence over his motion to suppress and his trial objection on the ground that an illegal search resulted in the seizure of the pistol. The challenge necessitates a statement of the evidence pertinent to the search and seizure.

On the night of 30 July 1979, Amarillo Police Officer Stan Simmons, operating a police car eastward on Amarillo Boulevard in company with Officer Kenneth R. Ten Brink, was signaled to a stop by Johnnie Burns, who was driving an automobile occupied by her husband, Virgil Burns. Officer Simmons knew Mrs. Burns, who never had given him any information, by appearance. Both officers knew Mr. Burns and knew his reputation in the community was bad, but neither knew his reputation for truth and veracity, although on one occasion Mr. Burns had furnished Officer Simmons with credible, reliable information. Under the circumstances existing on this night, Officer Simmons believed Mr. Burns to be a credible person.

At the hearing on the motion to suppress, only Officers Simmons and Ten Brink gave testimony. Officer Simmons testified Mrs. Burns told him that appellant had a gun in his car and that "just now," at a place fixed some fourteen blocks westward on the boulevard, she had seen appellant take the gun, a revolver, out of his car's trunk and put it in the passenger compartment.[1] The officer also testified that Mr. Burns said, "Yes, that's true," and, further, that "he was supporting her story, saying basically the same thing."

Officer Ten Brink recalled that Mrs. Burns said the person driving the white over black Cadillac coming eastward on Amarillo Boulevard had a gun and she had just seen it.[2] The officer testified that Mr. Burns confirmed what Mrs. Burns was saying.

Parenthetically, Mrs. Burns, while testifying at the trial, acknowledged that she stopped the officers and told them that appellant had a gun; however, she said she did so because she was angry at appellant, thinking he had caused police officers to stop and search the Burns' automobile for a nonexistent gun earlier that night. She

---

[1] After Officer Simmons testified at trial that Mrs. Burns said she heard appellant say, when he got the gun, something like, "Now, I have my protection," the court sustained a hearsay objection and instructed the jury to disregard the statement and not to consider it for any purpose. Subsequently, in her trial testimony, Mrs. Burns denied making the statement.

[2] During the trial, Officer Simmons testified fully to what Mrs. Burns said she observed, but Officer Ten Brink's attempt to testify to what Mrs. Burns said she had seen was forestalled by the court's sustention of a hearsay objection.

denied that she had seen appellant with a gun or told the officers she had seen it, although she admitted she had seen appellant with a female companion at the time and place where, so the officers testified, she said she saw the gun. The State claimed surprise and, probably for that reason, Mrs. Burns was not asked whether, as the officers stated, Mr. Burns confirmed the information as she gave it.

■ While the information was being related, according to the officers, appellant and a female companion drove by in a white over black Cadillac, proceeding eastward on Amarillo Boulevard, and Mrs. Burns said, "There it is now." [3] Officer Simmons was both familiar with and recognized appellant's car and appellant as the driver. He knew appellant had been confined in the penitentiary and was aware of street knowledge about him. After the officer professed to know appellant's reputation in the community, inquiry into the character of that reputation was summarily foreclosed by the court gratuitously injecting, "You don't need to go into that, I could care less at this point." [4]

Each officer testified, depending upon the phrasing of the questions at different times, that acting on the information supplied by Johnnie and Virgil Burns together or by Johnnie Burns alone, they immediately pursued and stopped appellant, who had not committed any traffic offense. It was the belief of Officer Simmons that appellant was not under arrest, the officer explaining "if there was no gun, I would have released him." [5]

Told by Officer Simmons that there was information he had a gun which needed to be checked, appellant, at the request of the officer, got out of his automobile. No gun was found in Officer Simmons' search of appellant's person.

Meanwhile, Officer Ten Brink approached the passenger and asked if she would step from the automobile. When she did, the officer knelt down, looked through the open passenger door into the automobile, and saw the butt of a pistol, identified at the trial as a loaded .38 caliber Rossi, sticking out from under the passenger's seat. The officer seized the pistol, the prosecutorial use of which as evidence appellant attempted to suppress, and now contends was erroneous, on the ground that the seizure resulted from an illegal search.

In assigning illegality to the search producing the firearm, appellant only credits that testimony which, standing alone, reveals that the sole and exclusive justification for the stop and search was the tip from an unfamiliar informer, Johnnie Burns, whose reliability was unknown to the searching officers and who denied articulating any circumstances to validate the tip. If that had been all of the testimony before the trial court, we would agree with appellant that under the prevailing view in *Ebarb v. State*, 598 S.W.2d 842 (Tex.Cr. App.1980), there would be insufficient evidence of specific and articulable circumstances to justify the investigatory stop and search.

But, here, there was other testimony contradicting that upon which appellant relies before the court. It then became the province of the trial judge to weigh and credit the testimony by assessing the credibility of the witnesses, the judge being privileged to believe or disbelieve any part or all of the witnesses' testimony in ascertaining the facts. *Clark v. State*, 548 S.W.2d 888, 889 (Tex.Cr.App.1977). Our inquiry, then, is whether there are testimonial facts which, if believed by the trial judge in determining the firearm was admissible evidence, warrant a person of reasonable caution in the belief that an investigatory stop and search

3. When she testified, Mrs. Burns was not asked whether she pointed out appellant's automobile as it passed.

4. An officer's knowledge of a suspect's reputation is a practical consideration upon which the officer properly may rely in assessing the reliability of an informant's tip. *United States v.*

*Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 2081, 29 L.Ed.2d 723 (1971).

5. Appellant neither contends there was, nor addresses in his ground of error any question of, an illegal arrest.

were justified.[6] *See Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968).

 Viewed in this light, the testimony reveals that while Johnnie Burns previously had not furnished the officers any information from which her credibility could be determined, her information was confirmed by Virgil Burns—*i. e.*, "he was . . . saying basically the same thing"—who was known to Officer Simmons and whose reliability was attested by the credible information he previously had given to the officer. Hence, at this point, the information carried enough indicia of reliability to justify the investigatory stop of appellant, for the officers, knowing this precise information, were not constitutionally enjoined to simply shrug their shoulders and allow a crime to occur or a criminal to escape. *Adams v. Williams*, 407 U.S. 143, 145–47, 92 S.Ct. 1921, 1922, 32 L.Ed.2d 612 (1972).

Moreover, the informants' details of personal observation of the firearm in appellant's possession "just now," of his automobile and its route of travel, together with Mrs. Burns' identification of appellant's automobile as it passed, enabled the officers to conclude that the informants spoke with personal knowledge.[7] The observations of the officers verified every fact related by the informants except the presence of the firearm in appellant's automobile. Thus, a person of reasonable caution could believe that the remaining item of information, *i. e.*, the presence of the gun in the passenger compartment, likewise would be true. *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959).[8]

Therefore, the underlying circumstances sufficiently supported the credibility of the Burns' information so as to justify the in-

vestigatory stop and search, rendering the firearm seized admissible in evidence. *Buitron v. State*, 519 S.W.2d 467 (Tex.Cr.App.), *cert. denied*, 423 U.S. 837, 96 S.Ct. 64, 46 L.Ed.2d 56 (1975); *Coyne v. State*, 485 S.W.2d 917 (Tex.Cr.App.1972); *Almendarez v. State*, 460 S.W.2d 921 (Tex.Cr.App.1970), *cert. denied*, 402 U.S. 974, 91 S.Ct. 1663, 29 L.Ed.2d 139 (1971). *See, also, Anderson v. State*, 467 S.W.2d 434 (Tex.Cr.App.1971), and *Rangel v. State*, 444 S.W.2d 924 (Tex.Cr.App.1969), for like results reached on similar evidence. Accordingly, the ground of error is overruled.

The judgment is affirmed.

istrate for the issuance of a search warrant. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

**6.** The exception to the constitutional requirement that a warrant be obtained was first applied to readily movable automobiles by *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925).

**7.** Such personal observations, coupled with the honesty of the informer shown by the officer's previous experience with him, is a sufficient showing of a probable cause to a neutral mag-

**8.** Of course, the seizure of the firearm itself may not be considered a corroborating element of the credibility of the information received. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 415, 9 L.Ed.2d 441 (1963).