**Lee Warren EISENHAUER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 889–83.**

Court of Criminal Appeals of Texas, En Banc.

Oct. 17, 1984.

W. Scott Carpenter, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Timothy G. Taft and Jesse Rodriguez, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON STATE'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This appeal is from a conviction for possession of a controlled substance, to-wit: cocaine. Following appellant's plea of nolo contendere before the court, punishment was assessed at six years' imprisonment, probated, and a fine of $2,000.00.

Prior to the bench trial, the appellant filed a pre-trial motion to suppress evidence seized pursuant to his warrantless arrest and the search incident thereto. At a hearing on the motion to suppress, only one police officer testified and the motion was overruled. Thereafter appellant entered his nolo contendere plea and the evidence seized as a result of the search was utilized to support his plea and the judgment. See Article 1.15, V.A.C.C.P. After conviction, the appellant appealed only the denial of the pre-trial motion to suppress, which was permissible under Article 44.02, V.A.C.C.P.

On appeal the conviction was reversed by the Houston (1st) Court of Appeals. *Eisenhauer v. State*, 657 S.W.2d 184 (Tex. App.—Houston [1st]). That court found the trial court erred in overruling the motion to suppress in that the warrantless arrest of appellant was based on an informer's tip which failed to meet the second prong of the test enunciated in *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and explicated in *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969).

It is clear that the decision of the Court of Appeals was solely based on federal constitutional grounds.

We granted the State's petition for discretionary review to determine the correct-

ness of that decision. The State urges that the Court of Appeals erred in not applying *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), which rejected the rigid two-prong test of *Aguilar.*

In his motion to suppress appellant urged:

"I.

"Defendant was arrested without a warrant and without probable cause in violation of the IV, V, and XIV Amendments to the Constitution of the United States and in violation of the laws and Constitution of the State of Texas.

"II.

"That the search of Defendant's person and luggage does not fall within any cogent exception to the Fourth Amendment."

After a hearing on said motion, appellant's counsel offered no authority to support his position that no probable cause had been shown except a reference to *"Draper-Aguilar-Spinelli* situations." The motion to suppress was overruled.

In his first ground of error on appeal, appellant contended:

"The trial court erred in failing to suppress the evidence for the reason that appellant's (sic) arrest was without probable cause."

Among the authorities urged were *Aguilar, Spinelli, Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959), *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979), and *Shimel v. State,* 640 S.W.2d 666 (Tex.App.— Houston [14th] 1982), applying *Draper.*

1. After sustaining the first ground of error on federal constitutional grounds, the court added footnote # 1:

"In *Gate v. Illinois* (sic), no. 81-430, U.S. Supreme Court, decided June 8, 1983 [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527], abolished two-prong standard set forth in *Aguilar v. Texas,* 378 U.S. 108 [84 S.Ct. 1509, 12 L.Ed.2d 723], but said, however, that the states could retain and follow the· two-prong standard at its election. Texas, as yet, has not elected to abandon the two-prong standard."

In grounds of error two, three and four appellant expressly contended the search was in violation of state law. In grounds of error five and six he contended there was insufficient evidence to show he consented to the search, and if he did consent, such consent to search was secured through the exploitation of his illegal arrest.

The Court of Appeals sustained appellant's first ground of error on federal constitutional grounds finding no probable cause for the warrantless arrest and that any evidence derived from the arrest should have been suppressed citing *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). The Court of Appeals also sustained the fifth and sixth grounds of error regarding consent. As to appellant's contentions regarding state statutes and law, the Court wrote:

"Appellant's second, third, and fourth grounds of error also address the illegality of the search. In view of the fact that the *Aguilar* test of probable cause was not met, these grounds need not be addressed."

The State in its petition for discretionary review urged that the "panel opinion of the First Court of Appeals erred in its failure to apply *Illinois v. Gates* ... to this case." [1]

Thus the only question before us for review is whether the Court of Appeals properly applied federal constitutional law in finding that there was no probable cause for the warrantless arrest and that the trial court erred in overruling the motion to suppress evidence.

The court did not base its decision on ground of error #1 on any *discussion* that independent of federal constitutional law Texas had in fact adopted the *Aguilar* test, as part of the state law, or that having adopted the same had not elected to abandon the same. All we have is the assertion in the footnote. Since the Court of Appeals did not reach the grounds of error relating to Texas law, it is not clear why the footnote was added. In view of our disposition of this cause we make no comment on the soundness of the statement made in the footnote.

Initially we look to the facts developed at the suppression hearing.

Houston Police Officer D.D. Furstenfeld of the Narcotics Division was assigned to the Houston Intercontinental Airport on February 16, 1982. About 1 p.m. he received a telephone call at his office in Terminal A. He revealed the call was from "a reliable informant, confidential" who gave him information concerning an individual named Lee Eisenhauer. Furstenfeld was told Eisenhauer would depart from the airport at 1:30 p.m. en route to Miami, Florida, and would return to Houston on the same day with cocaine in his possession.

The informant gave the following description of Eisenhauer: white male, approximately 22 years of age, 5′ 10″ tall, weighing 160 pounds, with short, dark hair. He told Furstenfeld that Eisenhauer would be wearing a beige tweed jacket, blue jeans, and white tennis shoes.

Officer Furstenfeld went to Terminal C and observed the plane for Miami leaving the gate. He went to the Continental Airlines ticket desk and ascertained that a Lee Eisenhauer was on the 1:30 flight to Miami, and was booked on a return flight the same day which would arrive in Houston at 8 p.m.

At 8:03 p.m. Furstenfeld saw an individual fitting the description given by the informant, deplane. He testified that while the individual was dressed as described, etc., he still did not know the individual's name. The individual looked around the gate lobby, appearing somewhat nervous. The individual was carrying a piece of carry-on luggage. He walked at a fast pace down the concourse, looking over his shoulder twice. He took the escalator to the baggage area, bypassed that area, and approached the north exit.

At this point Furstenfeld and his partner, Officer Burnias, approached the individual, identified themselves as police officers, and asked if they could talk to him. The individual agreed. He moved toward a small phone booth or cubicle and put his bag down. The officers asked if he had just returned from Miami. He stated he had.

When asked for his ticket and other identification, the individual complied. The airline ticket and other identification bore the name Lee Eisenhauer.

When appellant inquired "What's this all about?" Furstenfeld advised Eisenhauer, identified as the appellant, that he believed him to be in possession of cocaine brought in from Miami. Appellant, according to the officer, became nervous, his hands began to shake, perspiration broke out on his forehead and he began to stutter.

At this juncture, another police officer,[2] Castillo, standing nearby, approached the appellant and told him that they "were onto his game" and knew he had gone to Miami to "score cocaine" and asked if he had it with him. Appellant looked at the officers and stuttered, "What happens now?" Furstenfeld advised they would like for him to consent to a search of his person and bag, that he did not have to consent, that he had a right to require a search warrant before any search was made.

What happened thereafter varies somewhat from the direct to the cross-examination of the officer.

On direct examination by the State Furstenfeld related appellant responded to his advice about consent by taking off his jacket, handing it to Officer Burnias and stating, "It's in the pocket." Burnias looked in one pocket and Furstenfeld looked in the other pocket, and he (Furstenfeld) recovered a small ziploc baggie wrapped in a napkin, containing approximately 28 grams of white powder. Furstenfeld field-tested it and it reacted positive for cocaine.

On cross-examination Furstenfeld stated that after his statement regarding consent that appellant stuttered but did not say anything. It appears that the appellant's bag was then searched which did not reveal any contraband. At this point Officer Gannon, standing nearby, suggested the cocaine might be in appellant's sock. Officer Castillo then said to appellant, "Give it up,

2. All officers involved were dressed in mufti.

you are caught" or something "like that." It was then that appellant handed his coat to the officers who found the cocaine.

In *Aguilar,* the Supreme Court wrote:

"Although an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant, *Jones v. United States,* 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, see *Rugendorf v. United States,* 376 U.S. 528, 84 S.Ct. 825 [11 L.Ed.2d 887] was 'credible' or his information 'reliable'." 378 U.S. at 114–115, 84 S.Ct. at 1514.

The holding in *Spinelli* was, inter alia, that corroborating facts from police observations which are stated in the search warrant can be taken into account to determine whether the affidavit as a whole meets the requirements of *Aguilar.*

The Court of Appeals in this warrantless arrest case found the first prong of *Aguilar* was "satisfied by the highly detailed nature of the informant's allegations," citing *Spinelli,* but found the second prong was not met since it was not shown why the officer deemed the informant credible and the information reliable.

In *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (June 8, 1983), the Supreme Court held that the rigid "two prong test" under *Aguilar* and *Spinelli* for determining whether an informant's tip establishes probable cause for issuance of a warrant would be abandoned and a "totality of the circumstances" approach that traditionally has informed probable cause determinations would be substituted in its place, and that probable cause for the search warrant authorizing search of the Gates' home and automobile was established by anonymous letter indicating that the defendants were involved in activities in violation of State drug laws and predict-ing future criminal activities where major portions of the letter's predictions were corroborated by information provided to affiant by federal agents.

In *Gates* the Court wrote:

"We agree with the Illinois Supreme Court that an informant's 'veracity,' 'reliability' and 'basis of knowledge' are all highly relevant in determining the value of his report. We do not agree, however, that these elements are entirely separate and independent requirements to be rigidly exacted in every case which the opinion of the Supreme Court of Illinois would imply. Rather, as detailed below, they should be understood simply as closely intertwined issues that may usefully illuminate the commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place.

"This totality of the circumstances approach is far more consistent with our prior treatment of probable cause than is any rigid demand that specific 'tests' be satisfied by every informant's tip.
" * * *

"As these comments illustrate, probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.
" * * *

"Unlike a totality of circumstances analysis, which permits a balanced assessment of the relative weight of all the various indicia of reliability (and unreliability) attending an informant's tip, the 'two pronged test' has encouraged an excessively technical dissection of informants' tips, with undue attention being focused on isolated issues that cannot sensibly be divorced from the other facts presented to the magistrate.
" * * *

"For all these reasons, we conclude that it is wiser to abandon the 'two-pronged test' established by our decisions in *Aguilar* and *Spinelli.* In its place we reaffirm the totality of the cir-

cumstances analysis that traditionally has informed probable cause determinations. See *Jones v. United States,* supra; *United States v. Ventresca,* supra; *Brinegar v. United States,* supra. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for ... conclud[ing]' that probable cause existed. *Jones v. United States,* supra, 362 U.S., at 271, 80 S.Ct., at 736. We are convinced that this flexible, easily applied standard will better achieve the accommodation of public and private interests that the Fourth Amendment requires than does the approach that has developed from *Aguilar* and *Spinelli.*"

The Court in *Gates* emphasized that the task of a reviewing court is not to conduct a de novo determination of probable cause, but only to determine whether there is substantial evidence in the record supporting the magistrate's decision to issue the warrant.

To emphasize what it intended in *Gates,* the Supreme Court recently reversed the Supreme Judicial Court of Massachusetts in *Massachusetts v. Upton,* — U.S. —, 104 S.Ct. 2085, 80 L.Ed.2d 721, 35 Cr.L. 4044 (May 14, 1984). In *Upton* the Massachusetts court apparently viewed *Gates* as merely adding a new wrinkle to the two-pronged test of *Aguilar* and *Spinelli:* where an informant's veracity and basis of knowledge are not sufficient, substantial corroboration of the tip may save an otherwise invalid warrant. The Supreme Court, however, called attention to its explicit language in *Gates* that it was abandoning the *Aguilar-Spinelli* approach, and faulted the Massachusetts court for conducting a de novo probable cause determination instead of merely deciding whether the evidence

viewed as a whole provided a "substantial basis" for the magistrate's finding of probable cause.

 We here observe that *Aguilar* and *Spinelli* and *Gates* all concerned search warrants, but it is well established that the standard for determining the sufficiency of the informant's tip is the same for either search warrants or arrest warrants. *Whiteley v. Warden, Wyoming State Penitentiary,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971); *Cole v. State,* 484 S.W.2d 779 (Tex.Cr.App.1972) (footnote 2). And the standards applicable to determining whether the facts of a case support an officer's probable cause assessment at the time of the challenged warrantless arrest and search are at least as stringent as the standards applied when reviewing the decision of a magistrate. *Whiteley v. Warden, Wyoming State Penitentiary,* supra; *Ochs v. State,* 543 S.W.2d 355 (Tex. Cr.App.1976), cert. den. 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977); *Truitt v. State,* 505 S.W.2d 594, 596 (Tex.Cr.App. 1974); *Cole v. State,* supra; *Brown v. State,* 481 S.W.2d 106 (Tex.Cr.App.1972).

In *United States v. Mendoza, et al.,* 722 F.2d 96 (5th Cir.1983), the court in footnote # 5 stated:

"We recognize that *Gates* dealt with probable cause for the issuance of a warrant for the search of a vehicle and a house. This determination of probable cause, however, is applicable to both warrant and warrantless searches. *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) ...."

 It is clear that the "totality of the circumstances" standard of *Gates* is applicable to warrantless arrests and searches.

In *Bellah v. State,* 653 S.W.2d 795 (Tex. Cr.App.1983), this court held that *Gates* applied instead of *Aguilar* in a case involving an affidavit for an arrest warrant.

Without reaching an application of *Gates,* the State argues in its brief that the warrantless arrest and search incident thereto in the instant case could be upheld

under the *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959)—*Almendarez v. State*, 460 S.W.2d 921 (Tex.Cr.App.1970), line of cases. See *Rangel v. State*, 444 S.W.2d 924 (Tex.Cr. App.1969); *Fry v. State*, 493 S.W.2d 758 (Tex.Cr.App.1972); *Rivas v. State*, 506 S.W.2d 233 (Tex.Cr.App.1974); *Buitron v. State*, 519 S.W.2d 467 (Tex.Cr.App.1975); *Ochs v. State*, 543 S.W.2d 355 (Tex.Cr.App. 1976) cert. den. 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977); *Roberts v. State*, 545 S.W.2d 157 (Tex.Cr.App.1977); *Hicks v. State*, 545 S.W.2d 805, 858 (Tex.Cr.App. 1977). See also *United States v. Acosta*, 411 F.2d 627 (5th Cir. 1969); *Fry v. Estelle*, 527 F.2d 420 (5th Cir. 1976).

*Almendarez* involved a warrantless arrest and a search incident thereto. There a police officer received information from a previously reliable informer. The information given included detailed description of automobiles of defendant and his companion, including license numbers, and marihuana could be found in the vehicle which would be located at a certain location. The officer was not told the informer had seen marihuana or how he had come by his information. The officer went to the location and found the automobiles as described. There this court wrote: "There would appear to be some indication that the informer spoke with personal knowledge or had gained his information in a reliable way. At the point of interception every fact except the presence of marihuana was verified." The arrest and the search that followed was upheld. See also *Fry v. Estelle*, supra.

In *Buitron*, supra, it was held on the basis of the independent observations of the officers coupled with the information

from the reliable informer, there was probable cause to search the red and white pickup and the defendant. See also *Kwant v. State*, 472 S.W.2d 781 (Tex.Cr.App.1971); *Hicks v. State*, supra.

This line of cases, as in *Draper*,[3] nearly always includes a tried and true informer which satisfies the second prong of *Aguilar*, and situations where the details given by the informer and corroboration of the details by the officers satisfies the first prong of *Aguilar*. See *Jones v. State*, 640 S.W.2d 918 (Tex.Cr.App.1982). While this line of cases is instructive, the informer in the instant case was not shown to be a previously reliable informer, or one which had a proven track record.

■ We now look at the "totality of the circumstances" approach. Officer Furstenfeld testified he received his information from "a reliable informant, confidential." He did not testify nor was he asked whether the informer had given him previously reliable information, etc.[4] A mere assertion or conclusion that an informer is credible, without more, is insufficient to establish credibility. *Aguilar*, supra; *Cole v. State*, 484 S.W.2d 779, 782 (Tex.Cr.App. 1972). This much of *Aguilar* is still retained by *Gates*. 462 U.S. at ——, 103 S.Ct. at p. 2332. Moving on, we observe that once Officer Furstenfeld received the informer's tip, he went immediately to Terminal C of the airport and found the plane to Miami at 1:30 p.m. was leaving. At the Continental Airlines ticket counter he found a Lee Eisenhauer was on the departed flight and booked to return to Houston that night, just as the informer had reported. At this point he was unable to verify the physical descriptions given, etc., by the

---

3. See and cf. footnote 12 of *Gates* relating to *Draper*.

4. The Court of Appeals was in error in stating that Furstenfeld had never received any information from the informer prior to the telephone call on February 16, 1982. The record on cross-examination reflects:

"Q When did you receive your information from the informant?

"A At approximately 1:00 o'clock p.m.

"Q Had he given you any information before 1:00 o'clock *with respect to Mr. Eisenhauer?*

"A No, sir.

"Q Did he give you any information after 1:00 o'clock, *with respect to Mr. Eisenhauer?*

"A After I spoke to him on the phone one is all I talked to him, *no, sir.*" (Emphasis supplied.)

This does not translate into the conclusion reached by the Court of Appeals, and we find no other record evidence relating to the matter.

informer. As Furstenfeld related, he would not have at the time been able to present probable cause to a magistrate. He met the incoming flight from Miami. At 8:03 p.m. he observed an individual wearing the clothes described by the informer and meeting the physical description. The individual, carrying a bag, looked around the gate lobby appearing nervous. Then he walked at a fast pace down the concourse looking over his shoulder twice. He bypassed the baggage area and headed for the north exit. Officer Furstenfeld admitted that most of these actions were common in airports and were innocent in themselves.

In *Gates*, 462 U.S. at ——, 103 S.Ct. at p. 2335, n. 13, the Court observed that seemingly innocent activity may become suspicious in the light of the initial tip. The Court wrote:

"... As discussed previously, probable cause requires only a probability or substantial chance .of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands ... In making a determination of probable cause the relevant *inquiry is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts."* See also *United States v. Mendoza,* et al., 722 F.2d 96 (5th Cir. 1983).

As Furstenfeld saw the individual head for the north exit, he and his partner approached him and identified themselves as police officers. They asked if they could talk to him. The individual agreed and affirmatively answered the question of whether he had been to Miami. He complied with the request for his airline ticket and other identification. The ticket and other identification bore the name Lee Eisenhauer as given by the informer.

In *Florida v. Royer*, 460 U.S. 491, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983), the Court wrote:

"Second, law enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, by asking him if he is willing to answer some questions, by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions. See *Dunaway v. New York*, 442 U.S. 200, 120, n. 12, 99 S.Ct. 2248, 2255, n. 12, 60 L.Ed.2d 824 (1979); *Terry v. Ohio*, 392 U.S. 1, 31, 32–33, 88 S.Ct. 1868, 1885–1886, 20 L.Ed.2d 889 (1968) (Harlan, J., concurring); ed. at 34, 88 S.Ct. at 1886 (White, J., concurring). Nor would the fact that the officer identifies himself as a police officer, without more, convert the encounter into a seizure requiring some level of objective justification. *United States v. Mendenhall*, 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980) (Opinion of Stewart, J.). The person approached, however, need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way. *Terry v. Ohio*, supra, 392 U.S. at 32–33, 88 S.Ct. at 1885–1886 (Harlan, J., concurring) id, at 34, 88 S.Ct. at 1886 (White, J., concurring).

"Asking for and examining Royer's ticket and his driver's license were no doubt permissible in themselves ...." *Royer* 460 U.S. at 497, 103 S.Ct. at p. 1326.

■ The request in the instant case for and examination of Eisenhauer's airline ticket and other identification was likewise permissible in and of themselves.

At this juncture Eisenhauer, who was identified as the appellant, asked "What's this all about?" Furstenfeld advised him that it was believed that he was in possession of cocaine brought from Miami. Eisenhauer then became nervous, his hands began to shake, perspiration appeared on his forehead, and he began to stutter. Of-

ficer Castillo approached from his observation post, told appellant they were "onto his game" and asked if he had the cocaine he brought from Miami. Furstenfeld asked appellant to consent to a search, that he did not have to consent, that he could require a search warrant. The exact sequence of events thereafter is not clear. Appellant either immediately handed his coat to the officers after the warnings concerning consent, or when he said nothing after the consent admonishment, there was a fruitless search of his bag, a suggestion that "it" was in his sock and at that time the appellant relinquished his coat.

■ Regardless, it appears that when Castillo approached appellant was in a phone cubicle surrounded by four plainclothes officers, accusing him of transporting narcotics and requesting consent to search, or stating a search warrant would be obtained, and without indicating in any way that he was free to depart.[5] "These circumstances surely amount to a show of official authority such that 'a reasonable person would have believed he was not free to leave.' United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (Opinion of Stewart, J.)." Florida v. Royer, 460 U.S. at 497, 103 S.Ct at p. 1326. Thus appellant was effectively seized for the purposes of the Fourth Amendment.

■ Even if the informer was anonymous, he gave the officer a fair detailed physical description of the appellant and his clothing, giving appellant's name, and predicting his future actions that day and the purpose of appellant's trip. Then the

corroborative efforts of the police began. At the time of the interception, the arresting officer had personally verified every facet of the information given him by the informer except whether appellant had accomplished his mission and the cocaine was on his person or in his bag.[6] These circumstances, along with appellant's actions in the airport after arrival, albeit mostly innocent, together with his reactions when he learned the officers believed he possessed cocaine brought from Miami, furnished a substantial basis for Officer Furstenfeld to conclude there was probable cause to arrest the appellant, particularly when the "totality of circumstances" test is applied. The arrest was valid, and fruits of the search incident thereto were admissible in evidence as a matter of federal constitutional law. The trial court did not err in overruling the motion to suppress on this basis. Illinois v. Gates, supra.[7]; United States v. Peyko, 717 F.2d 741 (2nd Cir. 1983).

The judgment of the Court of Appeals is reversed and the cause is remanded to that court for action not inconsistent with this opinion, and to answer the grounds of error with regard to Texas law left unanswered because of the reversal of the conviction.

CLINTON, Judge, dissenting.

The opinion of the Court does not make "clear" to me that "the 'totality of the circumstances' standard of Gates is applicable to warrantless arrests and searches," (P. 952), and neither does the excerpt from a footnote in an opinion by the United States Court of Appeals for the Fifth Cir-

---

5. It is not clear whether appellant's airline ticket and other identification had been returned to him.

6. There would certainly appear to be some indication that the informer spoke with personal knowledge or had gained his information in a reliable way.

7. There is a constitutional preference for a warrant issued by a magistrate. Beck v. Ohio, 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948). We, however, observe what this court said in Buitron v. State, 519

S.W.2d 467 (Tex.Cr.App.1975), is here controlling:

"It would have been a greater intrusion, and unnecessary, to hold the occupants until either of the two magistrates in the county could be found. There was no error in the search conducted. Chambers v. Maroney, supra; Harris v. State, 486 S.W.2d 88 (Tex.Cr. App.1972); Coyne v. State, supra [485 S.W.2d 917 (Tex.Cr.App.1972)]." See also Scott v. State, 531 S.W.2d 825 (Tex.Cr.App.1976); Craddock v. State, 553 S.W.2d 765 (Tex.Cr. App.1977).

cuit. Indeed, so long as *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959) is extant, for the very reasons given by the Court (P. 953) the informant in the instant case will not pass muster under *Draper*. Thus, what the Court really finds is that the measure of probable cause under *Draper* has been replaced by the "totality" test of *Gates*. With deference, such a momentous decision as that should first be made by the Supreme Court of the United States. It is on that point that I respectfully dissent.[1]

That done, given the views so vigorously expressed in the dissenting opinion, it is important to understand just what is, as well as what is not, before this Court for review.

In its petition for discretionary review the State presents but one ground for review, *viz:*

"The panel opinion of the First Court of Appeals erred in its failure to apply *Illinois v. Gates* ... to this case on the basis that Texas has not yet elected to abandon the two-prong standard set forth in *Aguilar v. Texas...*"

Our grant of review was no broader than the ground presented, and the opinion of the Court must be read with that understanding. That is to say, all that this Court is deciding is "a matter of federal constitutional law." (P. 955). Whether the arrest and search of appellant were authorized by state law remains to be determined by the court of appeals on remand.

Similarly, we have no occasion today to retain or abandon the two prong standard of *Aguilar* as a matter of *state law*. Though the majority opinion comments on that matter, the Court does not foreclose the court of appeals from considering it as well on remand.

TEAGUE, Judge, dissenting.

It appears to me that sometimes some members of this Court respond to recent decisions of the Supreme Court of the United States much like the German boatsmen of old did when they heard Lorelei, the siren of German legend. And, Cappy, we all know what happened to the boatsmen, don't we?

After carefully reading the majority opinion, it is apparent to me that Presiding Judge Onion, its author, and those members of this Court who join in the opinion, have ignored what the Legislature of this State enacted after *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), was decided by the Supreme Court of the United States. See Chapter 18, V.A. C.C.P., which was enacted by the Legislature after *Aguilar v. Texas*, supra, was decided.

I find that the Supreme Court decision of *Aguilar v. Texas*, supra, was conceived by this Court's decision of *Nick Alfred Aguilar v. State*, 172 Tex.Cr.R. 629, 362 S.W.2d 111 (1962).

In *Nick Alfred Aguilar v. State*, supra, the defendant, Nick Alfred Aguilar, hereinafter referred to as Nick, challenged on appeal the sufficiency of an affidavit for a search warrant that had been issued by a justice of the peace of Harris County to search his residence for narcotics. The opinion on original submission by Judge Morrison reflects that incident to the search that was thereafter conducted, the police found narcotics inside of Nick's residence, for which Nick was subsequently prosecuted and convicted. Nick appealed his conviction to this Court, but this Court affirmed his conviction. See *Aguilar v. State*, supra.

On original submission, this Court, in an opinion by Judge Morrison, upheld the affidavit for the search warrant that had issued, even though it only stated the following: "Affiants have received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the above described

---

**1.** Also I do not agree with observations in note 7, for the case quoted involved occupants of a pickup truck and perforce the search was permissible under the "automobile exception" to the requirement of a warrant under the Fourth Amendment.

premises for the purpose of sale and use contrary to the provisions of the law." Nevertheless, this Court concluded: "[An] [e]xamination of the affidavit shows that it recites sufficient facts and information to constitute probable cause for the issuance of the warrant."

Nick filed a motion for·rehearing, in which he appears to have forcefully asserted that the affidavit for the search warrant was insufficient, "under the Federal Constitution." He relied upon *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), as authority for his contention.

On rehearing, this Court rejected Nick's assertion, reaching a two-fold conclusion, namely, "[w]e are unable to bring ourselves to the conclusion that our *exclusionary* statute, (Art. 727a, V.A.C.C.P., now Art. 38.23, V.A.C.C.P.), and the affidavit before us here deprive an accused of due process under the Federal Constitution." (114).

The opinion on rehearing reflects that before Judge Morrison, its author, reached the above conclusions, he had made a passing reference to the Texas Constitution, without citing or discussing any provision thereof. He also stated the following: "Our statute (Article 4, V.A.C.C.P., now Art. 1.06, V.A.C.C.P.), makes no such specific requirement, (that in addition to the grounds for probable cause for its issuance, the names of the persons whose affidavits had been taken in support thereof must be stated in the affidavit), but does provide that no warrant shall issue without probable cause supported by oath or affirmation." No reference was made in the opinion to the provisions of Articles 304, 311, and 312 (1925 Code of Criminal Procedure, now Articles 18.01, 18.08, and 18.09, V.A.C.C.P.), which then controlled the issuance of a search warrant in this State.

I pause to point out that a State, through its Legislature or its judiciary, is free, *as a matter of its own law,* to impose greater restrictions upon police activity than those the Supreme Court of the United States holds to be necessary upon federal constitutional standards. See *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975). Obviously, now as then, see the majority opinion and *Aguilar v. State,* supra, this Court has seen fit to limit the rights of the citizens of this State.

After this Court affirmed Nick's conviction, and overruled his motion for rehearing, Nick went on to Washington, D.C., where, when it came to what requirements must first be satisfied before a search warrant could issue in this State, history was about to be made. At that time, contrary to now, the Supreme Court was very concerned about the rights of citizens of these United States.

In *Aguilar v. Texas,* supra, the Supreme Court of the United States implicitly nullified virtually all of what this Court had stated in *Aguilar v. State,* supra. The Supreme Court held that, *as a matter of Federal Constitutional law,* if an affidavit for a search warrant was based upon hearsay, it must satisfy a two-prong test, namely, "The magistrate must (1) be informed of the underlying circumstances from which it can be determined that the affiant received his information in a 'reliable' way, and the magistrate must also (2) be informed of specific factual allegations from which the affiant concluded that the source was 'credible' or his information 'reliable.' Absent such factual allegations, there is not a sufficient basis for a neutral magistrate to make an impartial determination that probable cause exists." *Winkles v. State,* 634 S.W.2d 289, 291 (Tex.Cr.App.1982) (On Original Submission). This came to be known as the "Aguilar two-prong test."

After the Supreme Court of the United States decided *Aguilar v. Texas,* supra, the 59th Legislature of this State, in 1964, enacted a new code of criminal procedure for this State. Judge Fred Erisman, who was then one of the leading legal scholars of this State, but who is now deceased, in his "Introduction to the 1965 Revision Texas Code of Criminal Procedure," and under the statement, "Consideration of recent decisions of the Supreme Court of the United States which have adversely affected the long accepted practices in our Texas

Courts," pointed out the following: "The filing of sufficient facts to satisfy the Magistrate that probable cause does in fact exist for the issuance of a search warrant, is a requirement of Articles 18.01, 18.08, and 18.09, supplementing CCP 304, 311, 312."

Presiding Judge Onion, the author of the majority opinion in this cause, wrote a "Special Commentary" to the change in the law. After interpreting the provisions of Art. 18.01, supra, he had this to say in his special commentary about the new statutory provisions: "Therefore the affiant ... on affidavit for search warrant can no longer merely state he has received reliable information from a credible person ... that an offense has been committed, etc. The affidavit must show the magistrate ... additional facts to form a sufficient basis in fact for a determination by the magistrate that probable cause exists for the issuance of a search warrant."

Thus, it should be obvious to anyone that when the Legislature of this State enacted Chapter 18, supra, and, in particular, Art. 18.01(b), V.A.C.C.P., which it subsequently amended so that it now reads, "No search warrant shall issue for any purpose in this state unless sufficient facts are first presented to satisfy the issuing magistrate that probable cause does in fact exist for its issuance," and "A sworn affidavit setting forth substantial facts establishing probable cause shall be filed in every instance in which a search warrant is requested," the Legislature of this State intended and meant for the two-prong test announced in *Aguilar v. Texas*, supra, to become the law of this State. "The new code has been reworded to meet the requirements of *Aguilar v. Texas*, supra." Special commentary by Presiding Judge Onion.

The fact that in this instance the arrest and search were made without warrant is insignificant because it is now axiomatic that the standards applicable to the factual basis supporting probable cause for a warrantless arrest and search are at least as stringent as those applied to obtaining a search warrant, *Whiteley v. Warden of Wyoming Penitentiary,* 401 U.S. 560, 566, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), and may even be more stringent, see *United States v. Squella-Avendano,* 447 F.2d 575, 579 (5th Cir.1971). Also see *United States v. Anderson,* 500 F.2d 1311, rehearing denied, 504 F.2d 760 (5th Cir.1974), and *Colston v. State,* 511 S.W.2d 10 (Tex.Cr.App.1974).

Unfortunately, the rights of the citizens of these United States, when it came to searches and seizures, were set back on June 18, 1983, when the Supreme Court of the United States held in *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), that, for fourth amendment purposes, the two-prong test of *Aguilar v. Texas,* supra, was no longer acceptable. It adopted, in the place of the "Aguilar two-prong test," see supra, a "totality of the circumstances" test.

Notwithstanding the action of the Supreme Court, but because of the adoption of Chapter 18, supra, the Legislature of this State has seen fit, *as a matter of Texas law,* to impose a greater burden upon the police before they might obtain a search warrant from a magistrate or to arrest and search a person without a warrant; thus, *Illinois v. Gates,* supra, should have no effect upon Texas law.

Because the Legislature of this State has spoken, and though given the opportunity since *Illinois v. Gates,* supra, was decided to adopt the "totality of the circumstances" test announced by the Supreme Court in *Illinois v. Gates,* supra, it has not chosen to do so, this Court should continue to apply the holding of *Aguilar v. Texas,* supra, which has been incorporated into Chapter 18, supra, in making the determination whether an affidavit for a search warrant is valid or in making the determination whether there is probable cause to make a warrantless arrest and search.

I pause to ask: Have the members of this Court who join in the majority opinion forgotten so soon what a plurality of this Court stated in *Brown v. State,* 657 S.W.2d 797, 799 (Tex.Cr.App.1983), as to this Court

adhering to what our Legislature has enacted into law?

The Legislature has mandated by statute, see Chapter 18, supra, a different State law test from the federal law test the Supreme Court announced in *Illinois v. Gates*, supra. We should apply what the Legislature of this State has enacted and not head for the reefs.

The law in Texas is quite simple: Before an affidavit for a search warrant should issue, or before a warrantless arrest and search should take place, the two-prong test of *Aguilar v. Texas*, supra, must first be satisfied. *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex.Cr.App.1982).

I find that Justice Bass, the author of the opinion for the court of appeals, which is before this Court for review purposes, has sufficiently stated all that is necessary to be stated why the warrantless arrest and search that occurred in this cause are insufficient under Texas law, and why such were invalid under the "Aguilar two-prong test." Therefore, Justice Bass' opinion should be adopted as this Court's opinion.

For reasons stated by Justice Bass, in the opinion he authored, the warrantless arrest and search that occurred in this cause were invalid under the two-prong test of *Aguilar v. Texas*, supra, which has been implicitly, by judicial edict, made a part of Art. 1, Section 9, of the Texas Constitution, and has been expressly, by legislative edict, incorporated into the pro-

visions of Chapter 18, supra. Also see *Tolentino v. State*, supra, at 501; *Wilson v. State*, 621 S.W.2d 799, 803 (Tex.Cr.App. 1981); *Green v. State*, 615 S.W.2d 700, 706–707 (Tex.Cr.App.1981); *Kleasen v. State*, 560 S.W.2d 938, 942–944 (Tex.Cr. App.1978); *Knox v. State*, 586 S.W.2d 504 (Tex.Cr.App.1979); *Doescher v. State*, 578 S.W.2d 385 (Tex.Cr.App.1979); *Smith v. State*, 496 S.W.2d 90 (Tex.Cr.App.1973); *Gatson v. State*, 440 S.W.2d 297 (Tex.Cr. App.1969).

In all due respect to the majority of the members of this Court who join in the opinion authored by Presiding Judge Onion, as well as Presiding Judge Onion, *Aguilar v. Texas*, supra, was, before today, alive, well and breathing in this great State of Texas.

I respectfully dissent to the majority's failure to adhere to the law as enacted by the Legislature of this State. By its decision, the Court today acts legislatively, not judicially. This it should not do because it poaches upon territory that is constitutionally reserved to another body of our government—the Legislature of this State.