**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 94-10573
_____


UNITED STATES OF AMERICA,

Plaintiff-Appellee,


VERSUS


MARCUS WADLEY,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Northern District of Texas
_____


(July 13, 1995)

Before DAVIS and WIENER, Circuit Judges, and VANCE, District
Judge.[1]

DAVIS, Circuit Judge:

Wadley appeals the district court's denial of his motion to
suppress evidence seized in connection with his warrantless arrest
and a confession he gave to FBI agents shortly after he was taken
into custody. The district court denied Wadley's motion on the
grounds that his arrest was supported by probable cause. Based on
our review of the record, we agree that the arresting officers had
probable cause to arrest Wadley and that the district court did not

_____

[1] District Judge of the Eastern District of Louisiana,
sitting by designation.

err in denying Wadley's suppression motion. We therefore affirm Wadley's judgment of conviction.

I.

Marcus Wadley was arrested during a massive police undercover operation at the publicly-owned Prince Hall Chambre Apartments in the Dixon Circle area of South Dallas. On the night of November 19, 1993, approximately 60 Dallas police officers in 10 vehicles converged on the complex to investigate reports of narcotics trafficking and an incident in which a marked police cruiser was pelted with rocks and bottles while driving through the complex's parking lot. During the operation, Officer Craig Adams pulled into the complex and saw Marcus Wadley standing with his hands in his pockets talking to another person. Adams got out of his car, approached Wadley, and asked Wadley if he could ask him a few questions. Officer Adams testified during the suppression hearing that he wanted to ask Wadley about the attack on the police cruiser and whether he had any knowledge about drug trafficking in the neighborhood. Wadley refused to talk with Officer Adams and began to walk away. When Wadley accelerated from a walk to a run, Officer Adams shouted "Stop bolting, you're under arrest," and began to pursue him.

According to Officer Adams, as Wadley was fleeing from Adams, he placed his hand in his inner jacket pocket as though he wanted to dispose of something hidden in the pocket. Wadley was eventually cut off by approximately three other officers who had joined the pursuit. Seeing that his path was blocked, Wadley turned around and began to run back towards Officer Adams.

2

According to Officer Adams, Wadley attempted to dodge him. However, Adams grabbed Wadley and the other officers helped Adams pull Wadley to the ground. At the same time as the officers grabbed Wadley, he threw a brown paper bag in the direction of a trash dumpster. After handcuffing Wadley, Officer Adams retrieved the bag and discovered that it contained numerous plastic zip-lock bags of crack cocaine. Adams subsequently searched Wadley and found additional crack cocaine, along with approximately $500 in cash in his pants pocket. Later that night, Wadley was taken to the FBI's local office, where he was interviewed about the drugs seized during his arrest. Wadley waived his Miranda rights and gave the FBI agents the name of his drug supplier. He admitted that he sold drugs for this supplier on a weekly basis.

Wadley was eventually charged with one count of possession of cocaine with the intent to distribute it in violation of 21 U.S.C. § 841(a)(1). Wadley filed a motion to suppress the drugs recovered at the time of his arrest along with his post-arrest confession. Wadley argued that Officer Adams and the other arresting officers lacked probable cause to arrest him and that all of the drug evidence, including the bag thrown at the moment he was seized, was the fruit of this illegal arrest. After an evidentiary hearing, the district court found that Wadley threw the bag of crack "at approximately the same time as" his seizure by Adams and the other arresting officers. The court, however, found that the arresting officers had probable cause to arrest Wadley and denied his motion to suppress. Wadley subsequently entered a conditional guilty plea, reserving the right to appeal the district court's ruling on

3

his suppression motion.  Following sentencing, Wadley timely appealed.

                                    II.

Wadley challenges the district court's denial of his motion to suppress his confession and the drug evidence obtained after his arrest.  A warrantless arrest must be based on probable cause. United States v. Watson, 953 F.2d 895, 897 n.1 (5th Cir.), cert. denied, 504 U.S. 928 (1992).  If the arresting officers lacked probable cause and the arrest is invalid, evidence discovered as a result of the arrest is subject to suppression under the Fourth Amendment as the "fruit" of an illegal arrest. See United States v. Ramirez-Lujan, 976 F.2d 930 (5th Cir.), cert. denied, ___ U.S. ___, 113 S.Ct. 1587 (1993).  After reviewing the record, we conclude that the district court did not err in finding that the arresting officers had probable cause to arrest Wadley and that the arrest was valid.[2]

Probable cause for a warrantless arrest exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.  See Harper v. Harris County, 21 F.3d 597 (5th Cir. 1994).  Although probable cause requires more than a bare suspicion

---

[2]     During the suppression hearing, the government stipulated that Wadley's seizure was a full scale custodial arrest supported by probable cause, not a mere investigative detention pursuant to Terry v. Ohio, 392 U.S. 1 (1968). Given the government's stipulation and our conclusion that there was probable cause for a custodial arrest, we need not address whether Wadley's initial seizure could be justified as a Terry stop.

4

of wrongdoing, it requires "substantially less evidence than that sufficient to support a conviction."  United States v. Muniz-Melchor, 894 F.2d 1430, 1438 (5th Cir. 1990).  The presence of probable cause is a mixed question of fact and law. Id. at 1439 n.9.  We will not disturb the factual findings underlying the district court's probable cause determination absent clear error. Id. Accepting these facts, however, the ultimate determination of whether there was probable cause to arrest Wadley is a question of law that we must review de novo. Id.  We now turn to the facts and circumstances surrounding Wadley's arrest to determine whether the arrest was based on probable cause.

First, Officer Adams knew that the Prince Hall complex was a high crime area with a high incidence of drug transactions.  Prior to the night of Wadley's arrest, the Dallas Police Department received FBI intelligence reports revealing that the Prince Hall apartments had a high incidence of drug transactions. The department also received reports of drug trafficking by residents of the complex.  The police department's briefing to Adams and the other officers immediately before the Dixon Circle operation detailed this information.

Wadley's flight from the arresting officers further supports the district court's probable cause determination.  Standing alone, a suspect's attempt to walk away or flee from a police officer is generally not sufficient to create probable cause, even if the suspect flees in a high crime neighborhood. See United States v. Vasquez, 534 F.2d 1142, 1145 (5th Cir.), cert. denied, 429 U.S. 979 (1976); United States v. Tookes, 633 F.2d 712, 716 (5th Cir. 1980).

5

However, in combination with other facts and circumstances, flight from an officer may create probable cause where the defendant persistently attempts to evade capture. See Tom v. Voida, 963 F.2d 952, 960 (7th Cir. 1992)(holding that the defendant's "obvious determination to flee from any contact" with the arresting officer was one factor supporting the presence of probable cause). According to the testimony of Officers Adams and Benitez, Wadley was determined to evade capture. He first bolted and ran away from Officer Adams. When he saw other officers running toward him, he changed course, ran back toward Adams, and later dodged and weaved to avoid capture. Officer Adams described Wadley's conduct as a "cat and mouse" game.

Finally, Officer Adams testified that while Wadley was running away from him, Wadley reached into the inner pocket of his jacket as though he was trying to discard something. The district court credited Officer Adam's testimony that, based on his experience, drug dealers often try to drop or discard their contraband before they are captured. Officer Adam's training and prior experience with drug trafficking arrests and investigations is relevant in determining whether he had probable cause to arrest Wadley. See Muniz-Melchor, 894 F.2d at 1438. Based on these facts and circumstances, a reasonable officer was entitled to conclude that Wadley was attempting to evade capture so that he could discard the drugs he was carrying.[3] As a result, Wadley's arrest was valid and

---

[3] The government contends that we should consider Wadley's act of throwing the bag of cocaine as a factor supporting the presence of probable cause. We disagree. Probable cause must exist at the moment the arrest is initiated. United States v. Raborn, 872 F.2d 589 (5th Cir. 1989). The district

6

the evidence discovered as a result of the arrest is not subject to suppression under the Fourth Amendment. It follows that the confession was not tainted by an illegal arrest. The district court did not err in denying Wadley's suppression motion.[4]

AFFIRMED.

---

court expressly found that Wadley threw the bag of cocaine the moment he was arrested. Therefore, Wadley's attempt to discard the bag cannot be considered in determining whether probable cause existed at the moment the officers initiated the arrest. See id.

[4] Having concluded that Wadley's arrest was supported by probable cause, we need not address the government's argument that Wadley abandoned the bag of cocaine before he was seized and that the bag of cocaine was thus not the fruit of a seizure under California v. Hodari D., 499 U.S. 621, 629 (1991). Even if Wadley discarded the bag after his seizure, the evidence is not subject to suppression because the arrest was based on probable cause.