DISSENTING OPINION



Nos. 04-08-00614-CR & 04-08-00615-CR



The STATE of Texas,


Appellant



v.



Amanda Marie HOFFMAN,


Appellee



From the 216th Judicial District Court, Kerr County, Texas


Trial Court Nos. A-08-161 & A-08-162


Honorable Stephen B. Ables, Judge Presiding



Opinion by: Marialyn Barnard, Justice

Dissenting opinion by: Steven C. Hilbig, Justice


Sitting: Rebecca Simmons, Justice

 Steven C. Hilbig, Justice

 Marialyn Barnard, Justice


Delivered and Filed: May 13, 2009


 Because the majority fails to properly assess all the facts known to the police at the time of
the search, and thereby concludes the police lacked probable cause, I respectfully dissent.

Background


 Amanda Marie Hoffman was charged with possessing a controlled substance and tampering
with physical evidence. She filed a motion to suppress. At the suppression hearing, the State
established that on Saturday, January 26, 2008, Investigator Eric Geske of the Kerr County Sheriff's
Office received information from a confidential informant that Adam Triana was selling crack
cocaine from an unspecified motel room in the rear area of Whitten Motel ("the Whitten") in
Kerrville, Texas. (1) The informant, who had always provided reliable narcotics information in the
past, told Investigator Geske he received this information from another person. Geske testified the
informant had been providing information on an ongoing basis about Triana's involvement with
narcotics. Triana was well known to police as a trafficker in narcotics, including crack cocaine. He
had numerous arrests for narcotics violations and had previously served prison time for possession
of a controlled substance. Geske testified he had executed a search warrant at Triana's residence,
finding crack cocaine and marijuana, a few months before January 26, 2008. (2) Investigator Geske
also had information that Triana would trade drugs for guns.

 Investigator Geske took no action on the informant's tip until the following Monday, January
28th, when he received a call from Kerrville Police Department Corporal Harold Engstrom Jr.
Corporal Engstrom told Geske Triana had been arrested that morning for driving with an invalid
license and possession of marijuana, and that Triana claimed to be living at the Whitten with
Hoffman. Both men knew Hoffman as Triana's girlfriend or common-law wife. Investigator Geske
testified he shared with Corporal Engstrom what the confidential informant had told him two days
earlier. Corporal Engstrom explained that in his experience, it was common for people dealing drugs
out of a motel room or their residence to leave a stash of drugs behind if they are out making a
delivery. He testified dealers prefer not to carry all their narcotics with them, and noted Triana did
not have any crack cocaine in his possession when he was arrested. The two officers agreed to meet
at the Whitten to determine whether Hoffman was there and whether she would allow them to search
the room for narcotics.

 Approximately one hour after Triana's arrest, Engstrom and Geske met with the manager of
the Whitten at the motel. She informed them Hoffman worked at the Whitten and was provided
room 242 as part of her compensation. The manager confirmed Triana was staying at the motel, and
she escorted the officers to room 242, which was located on the second floor at the rear of the
Whitten.

 When the group was about twenty yards away from the room, Hoffman walked out of the
room and appeared to speak with someone on the ground level. Hoffman had her back to the group,
but soon turned around and made eye contact with the manager and the two officers. Corporal
Engstrom was wearing his police uniform. He testified Hoffman had "a look of panic" on her face
and "bolted back into the room" "as fast as she could," leaving the door open. Both officers moved
quickly to the doorway of room 242, with Corporal Engstrom in the lead. Investigator Geske
testified he was concerned for his safety because of Hoffman's actions and his knowledge that Triana
would trade drugs for guns. Corporal Engstrom testified when he arrived at the front door he saw
Hoffman standing over the toilet flushing it. Investigator Geske testified he could not see Hoffman
because his view was blocked by Corporal Engstrom, but he heard the toilet flushing as they arrived
at the door of the room. Investigator Geske stated neither officer entered the room until after they
heard Hoffman flushing the toilet. Both men testified the front door and the door to the bathroom
were left wide open. After seeing Hoffman and hearing the flushing, Corporal Engstrom and
Investigator Geske entered the room, and Corporal Engstrom pushed Hoffman away from the toilet. 
He reached into the toilet and retrieved a baggie. It was later determined the baggie contained crack
cocaine.

 Corporal Engstrom testified he had participated in the execution of numerous search warrants
where drugs were retrieved from toilets. He further testified that after seeing Hoffman standing over
the toilet and flushing it, he entered the room because he feared she was destroying evidence. 
Investigator Geske also testified he thought Hoffman was destroying evidence and stated it was
uncommon for a person to see him with a motel manager and then "immediately run into the room
and flush the toilet." 

 The trial court ultimately granted the motion to suppress and signed findings of fact and
conclusions of law. The only finding made by the trial court was that "[a]ll witnesses were credible
and testified truthfully." The court concluded that "based on the totality of the circumstances, law
enforcement lacked sufficient probable cause to enter the motel room" and "an exigency that
required an immediate entry into said motel room without a warrant did not exist."

Applicable Law


 Because the trial court found the only witnesses who testified - Investigator Geske and
Corporal Engstrom - to be "credible and truthful," we review the application of the law to the facts
de novo. See Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). Both probable cause
and exigent circumstances must have existed for the search to pass muster under the Fourth
Amendment. See Gutierrez v. State, 221 S.W.3d 680, 685-86 (Tex. Crim. App. 2007). "Probable
cause to search exists when reasonably trustworthy facts and circumstances within the knowledge
of the officer on the scene would lead a man of reasonable prudence to believe that the
instrumentality of a crime or evidence of a crime will be found." Estrada v. State, 154 S.W.3d 604,
609 (Tex. Crim. App. 2005). In reviewing the evidence, we consider the "totality of the
circumstances" known to the police at the time of the search. Illinois v. Gates, 462 U.S. 213, 238
(1983). The circumstances supporting a finding of probable cause may include flight or similar
evasive conduct. See United States v. Macias, 546 F.2d 58, 61 (5th Cir. 1977) (holding officers had
probable cause to search vehicle that made u-turn to avoid checkpoint and appeared to be "loaded
down"); Pyles v. State, 755 S.W.2d 98, 109 (Tex. Crim. App.) (holding fact that appellant
immediately turned and started walking in opposite direction when confronted by police officer was
factor to be considered in determining existence of probable cause to believe he was attempting to
flee after committing offense), cert. denied, 488 U.S. 986 (1988); see also Illinois v. Wardlow, 528
U.S. 119, 122, 124-5 (2000) (holding defendant's unprovoked flight from area of heavy narcotic
trafficking after noticing uniformed officers provided reasonable suspicion to detain and stating,
"[h]eadlong flight--wherever it occurs--is the consummate act of evasion: It is not necessarily
indicative of wrongdoing, but it is certainly suggestive of such"). The circumstances may also
include attempts to discard or conceal items. See United States v. Wadley, 59 F.3d 510, 512-13 (5th
Cir. 1995); Arnold v. State, 831 S.W.2d 556, 559 (Tex. App.-Austin 1992, pet. ref'd). Courts also
consider the experience of the officers involved because conduct that appears innocent to a causal
observer may carry an entirely different message to a trained, experienced police officer. Segura v.
State, 826 S.W.2d 178, 182 (Tex. App.-Dallas 1992, pet. ref'd). 

 In determining whether probable cause exists, we are instructed to use a common-sense
approach:

 As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would
"warrant a man of reasonable caution in the belief," Carroll v. United States, 267
U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be
contraband or stolen property or useful as evidence of a crime; it does not demand
any showing that such a belief be correct or more likely true than false. A "practical,
nontechnical" probability that incriminating evidence is involved is all that is
required. Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93
L.Ed. 1879 (1949). Moreover, our observation in United States v. Cortez, 449 U.S.
411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized
suspicion," is equally applicable to the probable cause requirement:

 "The process does not deal with hard certainties, but with
probabilities. Long before the law of probabilities was articulated as
such, practical people formulated certain common-sense conclusions
about human behavior; jurors as factfinders are permitted to do the
same-and so are law enforcement officers. Finally, the evidence thus
collected must be seen and weighed not in terms of library analysis by
scholars, but as understood by those versed in the field of law
enforcement."


Texas v. Brown, 460 U.S. 730, 742 (1983). Therefore, if one probable explanation of a set of
circumstances "as understood by those versed in the field of law enforcement" is that a crime is
being committed, probable cause exists. See State v. Cullen, 227 S.W.3d 278, 285 (Tex. App.-San
Antonio 2007, pet. ref'd) (Hilbig, J., concurring) (stating "under the proper standard for determining
the existence of probable cause, even though there may be a number of explanations offered to
account for an officer's observations, the pertinent question is whether one of those explanations is
that the person was committing an offense"). That there may be an innocent explanation for the set
of facts does not defeat a finding of probable cause: 

 [T]herefore, innocent behavior frequently will provide the basis for a showing of
probable cause; to require otherwise would be to sub silentio impose a drastically
more rigorous definition of probable cause than the security of our citizens demands
. . . In making a determination or probable cause the relevant inquiry is not whether
particular conduct is "innocent" or "guilty" but the degree of suspicion that attaches
to the particular types of non-criminal acts." 


Eisenhauer v. State, 678 S.W.2d 947, 954 (Tex. Crim. App. 1984) (quoting Gates, 462 U.S. at 243
n.13), overruled on other grounds, Heitman v. State, 815 S.W.2d 681 (Tex. Crim. App. 1991). 

 If probable cause is present, exigent circumstances justifying a warrantless search exist if 
"the police could reasonably have concluded that evidence would be destroyed or removed before
they could obtain a search warrant." McNairy v. State, 835 S.W.2d 101, 107 (Tex. Crim. App.
1991). As acknowledged by the majority, the same facts used in the probable cause analysis may
be relied upon in determining exigent circumstances. See Parker v. State, 206 S.W.3d 593, 601
(Tex. Crim. App. 2006).

Analysis


 In reaching its conclusion that Investigator Geske and Corporal Engstrom did not have
probable cause to search, the majority fails to consider all the information known to the officers
before they entered Hoffman's room. In reaching its conclusion, the majority cites only the
following facts argued by the State: (1) Triana lived at the Whitten; (2) Triana was a known drug
dealer or user; and (3) Hoffman was Triana's wife or girlfriend. Hoffman v. State, Nos. 04-08-00614-CR & 04-08-00615-CR, Slip Op. at ____ (Tex. App.--San Antonio May ___, 2009).
However, the following facts were also known to the police:


 Investigator Geske received information from a confidential informant that Triana was
selling crack cocaine from the "rear" of the Whitten two days before officers went there to
speak to Hoffman. The informant had been providing Geske information about Triana on an
ongoing basis and the information had always been accurate (3); 

 Triana told the officer who arrested him he was living at the Whitten with Hoffman;

 Triana did not have any crack cocaine in his possession when arrested;




 The investigators arrived at the Whitten approximately one hour after Triana was arrested;

 The manager at the Whitten told investigators Hoffman worked at the motel and was
provided a room as part of her compensation. The manager confirmed Triana was staying
at the motel; 

 Hoffman's room was located at the rear of the motel;

 When Hoffman saw the officers she had a "look of panic" upon on her face and "bolted" into
her room "as fast as she could" before officers even indicated they were there to speak with
her;

 Hoffman did not close the room door or the bathroom door; and

 Corporal Engstrom saw Hoffman standing over the toilet while flushing it.



Further, the trial court heard, and found credible and truthful, the following testimony about the
officers' training and experience: 


 Drug dealers using a motel room will often not keep their entire stash of drugs on them when
making deliveries away from the room, but will use the room as a storage place;

 It is common for people to attempt to dispose of drugs by flushing them when they are aware
of the presence of police; 

 Corporal Engstrom had participated in the execution of numerous search warrants where
drugs were retrieved from toilets; and 

 Investigator Geske testified it was "uncommon" for someone to see him and then
immediately run into a room and flush the toilet.


Although the majority acknowledges the State's argument that the investigators' training and
experience led them to believe Hoffman's conduct was indicative of criminal behavior, it appears
the majority did not afford this evidence any weight. See Segura, 826 S.W.2d at 182 ("[w]hen
determining probable cause, we must take into account the experience of the peace officer.").

 The majority concludes the State's argument that there was probable cause to search is
"unpersuasive" because the police acknowledged they did not have probable cause when they arrived
at the Whitten; police suspicions centered on Triana, who was already in custody; and police had no
specific information that Hoffman possessed drugs. Hoffman v. State, Nos. 04-08-00614-CR & 04-08-00615-CR, Slip Op. at ____ (Tex. App.--San Antonio May ___, 2009). However, these facts
alone do not encompass the "totality of the circumstances" and are not determinative of the issue of
probable cause. 

 Triana may have been the focus of the investigation, but another aspect of the investigation
was to determine whether drugs were present in his room at the Whitten. Triana's known history
of drug dealing, the informant's tip, the fact Triana did not have crack cocaine on him when he was
arrested, and the officers' experience led them to reasonably believe Triana may have left crack
cocaine in his motel room. Although none of the information provided by the informant pointed to
Hoffman individually, his information coupled with Triana's admission that he lived with Hoffman
at the Whitten certainly brought her into the sphere of suspicion. That suspicion grew stronger after
the police arrived at the Whitten and the manager confirmed Triana was staying there with Hoffman,
and that Hoffman's room was in the rear of the motel. Hoffman's panicked look when she saw the
investigators and her immediate flight into the room added weight to the investigators' suspicion
there were drugs in the room. See Wardlow, 528 U.S. at 124-25. Seconds later, Hoffman was
standing over the toilet in the room, flushing it. It is this act of destroying or disposing of some
object within seconds of seeing the police that tips the facts in favor of probable cause.

 Two cases illustrate this point. In Wadley, the court considered whether probable cause
existed to search a person police encountered in a housing project known for a "high incidence of
drugs transactions." 59 F.3d at 512. Without having any information linking Wadley to drugs,
police approached him on the street and attempted to ask him questions. Id. at 511. Wadley ran
from the police and during the chase an officer observed Wadley reach into his jacket pocket "as
though he wanted to dispose of something hidden in the pocket." Id. The Fifth Circuit concluded
that Wadley's presence in an area known for drug transactions, coupled with his act of running from
the officers, his apparent attempt to dispose of something during the chase, and the officer's
testimony that drug suspects will often attempt to dispose of drugs while being chased were
sufficient facts to constitute probable cause. Id. at 512-13. In Arnold, the Austin Court of Appeals
considered whether probable cause existed to search a matchbox. 831 S.W.2d at 557. In that case,
police encountered the defendant in front of a location known for drug trafficking. Id. Arnold
appeared startled when he saw the police and hurried into a nightclub. Id. Police followed him into
the club and saw Arnold attempting to hide a matchbox behind a machine. Id. The police testified
Arnold had a prior arrest for cocaine and that matchboxes are commonly used to carry drugs. Id. 
While noting Arnold's location, his actions upon seeing the police, and police knowledge of
Arnold's association with drugs, the court highlighted his concealment of the matchbox in
concluding there was probable cause:

 Most importantly, the officer's suspicions [about drugs in the matchbox] were
confirmed when he saw appellant trying to hide or dispose of the matchbox behind
the game machine. Under the circumstances, a reasonably prudent and cautious
police officer would be justified in believing that appellant would not go to such
trouble if the box contained only matches.


Id. at 559. 

 The majority contends Wadley and Arnold are distinguishable, and therefore inapplicable,
because the searches or seizures in those cases occurred in public places rather than a private
residence. Hoffman v. State, Nos. 04-08-00614-CR & 04-08-00615-CR, Slip Op. at ____ (Tex.
App.--San Antonio May ___, 2009). However, the location of the search or seizure is of no moment
in the probable cause determination. Location is important only in determining whether exigent
circumstances are required for entry into a particular place without a warrant. See Parker v. State,
206 S.W.3d 593, 597 (Tex. Crim. App. 2006) (holding that State must prove exigent circumstances
justifying immediate need to enter residence without warrant); Janicek v. State, 634 S.W.2d 687
(Tex. Crim. App. 1982) (holding that in every warrantless entry into private residence State has
burden to demonstrate that exigencies of situation made entry imperative).Conclusion

 In the present case, the facts observed by and known to the investigators as they stood at the
door of room 242, together with the knowledge gained from their training and experience, would
have "warrant[ed] a man of reasonable caution in the belief" that Hoffman was attempting to destroy
evidence or dispose of contraband. See Brown, 460 U.S. at 742; see also Wadley, 59 F.3d at 512-13;
Arnold, 831 S.W.2d at 559. It is of no moment that there may be an innocent explanation for
Hoffman's conduct. See Eisenhauer, 678 S.W.2d at 954; Cullen, 227 S.W.3d at 285. Because one
probable explanation, based on the totality of the circumstances and viewed or understood in light
of the experience of the investigators, was that there was contraband in the room and Hoffman was
attempting to dispose of it, the investigators had probable cause to enter the room and search the
toilet. Both the trial court and the majority erred by concluding otherwise. The facts that establish
probable cause in this case also led the investigators to the reasonable conclusion that evidence
would be destroyed before they could obtain a search warrant. Accordingly, there were exigent
circumstances justifying a warrantless search. See Parker, 206 S.W.3d at 601; McNairy, 835 S.W.2d
at 107.

 For these reasons, I must disagree with the majority and conclude the trial court abused its
discretion in ruling the investigators had no probable cause or exigent circumstances when they
entered Hoffman's room. I would uphold the search and reverse the trial court's order granting the
motion to suppress.



 Steven C. Hilbig, Justice

PUBLISH
1. During the hearing, the Whitten Motel was described variously as a hotel or motel. The doors of the rooms
apparently open to an exterior walkway.
2. The case resulting from that search was pending indictment at the time of trial.
3. The majority discounts the information from the confidential informant because he received the information
from a third party whose reliability was unknown to the investigators. See Hoffman v. State, Nos. 04-08-00614-CR &
04-08-00615-CR, Slip Op. at ____ (Tex. App.--San Antonio May ___, 2009). However, even if we consider the
information as an anonymous tip, such a tip, when "coupled with observations by police may ultimately present . . .
probable cause." See Turner v. State, 261 S.W.3d 129, 134 (Tex. App.-San Antonio 2008, no pet.).