**The STATE of Texas, Appellant,**

**v.**

**Amanda Marie HOFFMAN, Appellee.**

**Nos. 04–08–00614–CR, 04–08–00615–CR.**

Court of Appeals of Texas,
San Antonio.

May 13, 2009.

Discretionary Review Refused
Sept. 23, 2009.

---

---

Lucy Wilke, Assistant District Attorney–216th Judicial District, Kerrville, TX, for Appellant.

Robert Hennecke, Kerrville, TX, for Appellee.

Sitting: REBECCA SIMMONS, Justice, STEVEN C. HILBIG, Justice, MARIALYN BARNARD, Justice.

## OPINION

Opinion by MARIALYN BARNARD, Justice.

Amanda Marie Hoffman was indicted for the offenses of tampering with physical evidence and possession of a controlled substance in the amount of over one gram but less than four grams. After conducting a pre-trial hearing, the trial court granted Hoffman's motion to suppress. In one issue on appeal, the State argues the trial court erred in granting Hoffman's motion to suppress because there was probable cause and exigent circumstances for the officers to conduct a warrantless search; therefore, no evidence was obtained in violation of the Fourth Amendment of the United States and Texas Constitutions. We affirm the trial court's ruling.

### Background

On January 26, 2008, an officer received information from a confidential informant that Adam Triana was selling drugs from a room in the rear area of a certain motel. The confidential informant did not have firsthand personal knowledge of the selling but was advised of it by an unidentified third person. The officer did not have any information as to the credibility or reliability of the third person.

On January 28, 2008, Triana was arrested for Driving while License Suspended and Possession of Marihuana. While Triana was in jail, two investigators went to the motel where Triana stated he was living with Hoffman, his girlfriend. Hoffman was an employee of the motel and was provided a room in which to reside as part of her compensation. The investigators did not have a warrant.

When the investigators arrived at the motel, they met with Hoffman's boss, the motel manager, and asked her to assist them in walking up to Hoffman's room. As all three approached Hoffman's room with the motel manager in the lead, Hoffman exited her room and appeared to be speaking with someone on the floor below over a railing outside her room. When the manager and investigators were about twenty feet from Hoffman's room, Hoffman saw them, stopped her conversation, and rushed back into her residence, leaving the door open. The investigators approached the door as fast as they could and heard the toilet flush. Although they had no information regarding Hoffman possessing any drugs, they immediately entered her room and performed a warrantless search. One of the investigators saw Hoffman standing over the toilet although he admitted the bathroom was dark. The investigator pulled Hoffman away from the toilet, reached inside the toilet, and removed a bag of crack cocaine. The investigators also found marijuana in the room and information identifying Triana as a possible occupant.

Hoffman was indicted for the offenses of tampering with physical evidence and possession of a controlled substance in the

amount of over one gram but less than four grams. The trial court conducted a pre-trial hearing on Hoffman's motion to suppress, which was granted. This appeal followed.

## MOTION TO SUPPRESS

■ In one issue, the State argues the trial court erred in granting Hoffman's motion to suppress evidence obtained during the search of Hoffman's residence.[1] The State contends the search was valid because the officers had probable cause and there were exigent circumstances for them to enter the motel room and conduct a warrantless search. Therefore, no evidence was obtained in violation of any provisions of the Fourth Amendment of the United States and Texas Constitutions.

■ While the search of a residence without a warrant is presumptively invalid, some circumstances exist which justify a warrantless search. *Payton v. New York,* 445 U.S. 573, 586, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980). Examples of these circumstances include when the police have probable cause coupled with an exigent circumstance, when they have obtained voluntary consent, or when the search is conducted incident to a lawful arrest. *Gutierrez v. State,* 221 S.W.3d 680, 685 (Tex. Crim.App.2007) (*citing McGee v. State,* 105 S.W.3d 609, 615 (Tex.Crim.App.2003)). In these situations, the Fourth Amendment endures a warrantless search. *Id.*

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost complete deference to the trial court's findings of historical fact supported by the record and reviewing *de novo* the trial court's application of the law of search and seizure. *Car-*

*mouche v. State,* 10 S.W.3d 323, 327 (Tex. Crim.App.2000); *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997). The Court of Criminal Appeals recently summarized the approach to be taken when examining the validity of a warrantless search:

> To validate a warrantless search based on exigent circumstances, the State must satisfy a two-step process. First, there must be probable cause to enter or search a specific location. In the context of warrantless searches, probable cause exists "when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality ... or evidence of a crime will be found." Second, an exigency that requires an immediate entry to a particular place without a warrant must exist.... If the State does not adequately establish both probable cause and exigent circumstances, then a warrantless entry will not withstand judicial scrutiny.

*Gutierrez,* 221 S.W.3d at 685–86 (citations omitted). The State argues the investigators had probable cause to conduct the search based on the information received from the confidential informant, coupled with the exigent circumstance of Hoffman quickly entering her residence after making eye contact with the investigators, and the subsequent sound of a flushing toilet.

■ As noted above, probable cause exists "when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the

---

1. This appeal addresses the same issue presented in *State v. Triana,* 293 S.W.3d 224 (Tex.App.-San Antonio 2009, no pet. h.). Because we agree with its reasoning and analysis, we adopt that panel's opinion, and with the author's permission rely on the text of the analysis in that opinion.

instrumentality ... or evidence of a crime will be found." *See id.* The same facts which give rise to probable cause may also be relevant to an analysis of exigent circumstances. *See Parker v. State,* 206 S.W.3d 593, 600–01 (Tex.Crim.App.2006). The State argues the investigators had knowledge of several facts supporting probable cause, including their awareness that Triana lived at the location, that Triana was a known drug dealer and/or user, and that Hoffman was his girlfriend or common-law wife. The State also notes the investigators' training and experience in these types of investigations led them to believe Hoffman's actions in suddenly stopping a conversation and entering her residence after spotting the officers, and the subsequent toilet flushing, provided both the probable cause and exigent circumstances needed to enter Hoffman's room without a warrant.

We find the State's argument unpersuasive. One of the investigators testified that at the time they visited the motel, they did not have probable cause to search Hoffman's room and were hoping to gather more information so that a search warrant could be obtained. In addition, while their suspicions centered around Triana, the investigators knew Triana was in custody at that time. Testimony revealed the investigators had no specific information regarding Hoffman possessing drugs that would have given them probable cause to enter her room and conduct a search. *See Ybarra v. Illinois,* 444 U.S. 85, 91, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979) (stating "[w]here the standard is probable cause, a search ... must be supported by probable cause particularized with respect to that person"); *see also Maryland v. Pringle,* 540 U.S. 366, 372–73, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003) (quoting *Ybarra*). Consequently, the investigators failed to establish the requisite probable cause necessary to justify a warrantless search of

Hoffman's residence. Because probable cause was not present, we need not reach the second prong of the test requiring an exigent circumstance.

We initially note that one of the cases cited in the dissenting opinion is *Illinois v. Wardlow,* 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000). In *Wardlow,* however, the United States Supreme Court was analyzing whether reasonable suspicion justified a brief encounter between a citizen and a police officer on a public street. 528 U.S. at 123, 120 S.Ct. 673. The Court expressly recognized that " 'reasonable suspicion' is a less demanding standard than probable cause." *Id.* In the instant case, we are addressing whether the more demanding standard of probable cause was satisfied when the investigators intruded into Hoffman's private residence.

The two cases the dissenting opinion primarily relies upon in its analysis are readily distinguishable from the instant case, and those factual distinctions are crucial to the holdings therein given that probable cause is determined from the totality of the circumstances. *See Wiede v. State,* 214 S.W.3d 17, 25 (Tex.Crim.App. 2007) (noting appellate court considers totality of the circumstances when determining probable cause). First, in both *Wadley* and *Arnold,* the search or seizure in question occurred in a public place. *See United States v. Wadley,* 59 F.3d 510, 512 (5th Cir.1995) (parking lot of apartment complex); *Arnold v. State,* 831 S.W.2d 556, 557 (Tex.App.-Austin 1992, pet. ref'd) (nightclub). In the instant case, the investigators intruded into Hoffman's private residence, which is entitled to far greater Fourth Amendment protection than a parking lot or nightclub. As the United States Supreme Court has emphasized:

The Fourth Amendment protects the individual's privacy in a variety of set-

tings. In none is the zone of privacy more clearly defined than when bounded by the unambiguous physical dimensions of an individual's home—a zone that finds its roots in clear and specific constitutional terms: 'The right of the people to be secure in their ... houses ... shall not be violated.' That language unequivocally establishes the proposition that '[a]t the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.' In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house.

*Payton,* 445 U.S. at 589–590, 100 S.Ct. 1371 (citations omitted); *see also Kirk v. Louisiana,* 536 U.S. 635, 637–38, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002) (quoting *Payton* ); *State v. Steelman,* 93 S.W.3d 102 (Tex.Crim.App.2002) (odor of burnt marijuana emanating from residence coupled with tip that drug dealing was taking place at that residence did not establish sufficient probable cause to allow officers to enter residence and conduct a search without a warrant). Furthermore, unlike the officers in *Wadley* and *Arnold* who had personal knowledge that the public locations where the search or seizure occurred had high incidences of drug transactions or drug trafficking, the only information known to the investigators relating to Hoffman's room was that an unidentified third person had told a confidential informant that Triana, who was in police custody, had sold crack cocaine from an unspecified room in the rear area of the motel two days before. *See Wadley,* 59 F.3d at 512 (stating officer knew apartment complex was a "high crime area with a high incidence of drug transactions"); *Arnold,* 831 S.W.2d at 557 (stating Casanova Club was a "place well known to the officers for extensive drug trafficking"). Finally, in *Arnold,* the appellant had previously been arrested for possession of cocaine that he kept in a matchbox, and the officers had observed the appellant commit what they suspected were drug transactions on other occasions. 831 S.W.2d at 557, 559. In the instant case, the investigators had no information specific to Hoffman other than that she was dating Triana. Given the totality of the circumstances in the instant case, we hold the trial court did not abuse its discretion in granting Hoffman's motion to suppress.

## CONCLUSION

The State failed to establish the trial court erred in suppressing evidence gathered during a warrantless search. Accordingly, we affirm the ruling of the trial court.

STEVEN C. HILBIG, Justice, dissenting.

Because the majority fails to properly assess all the facts known to the police at the time of the search, and thereby concludes the police lacked probable cause, I respectfully dissent.

## BACKGROUND

Amanda Marie Hoffman was charged with possessing a controlled substance and tampering with physical evidence. She filed a motion to suppress. At the suppression hearing, the State established that on Saturday, January 26, 2008, Investigator Eric Geske of the Kerr County Sheriff's Office received information from a confidential informant that Adam Triana was selling crack cocaine from an unspecified motel room in the rear area of Whitten Motel ("the Whitten") in Kerrville,

Texas.[1] The informant, who had always provided reliable narcotics information in the past, told Investigator Geske he received this information from another person. Geske testified the informant had been providing information on an ongoing basis about Triana's involvement with narcotics. Triana was well known to police as a trafficker in narcotics, including crack cocaine. He had numerous arrests for narcotics violations and had previously served prison time for possession of a controlled substance. Geske testified he had executed a search warrant at Triana's residence, finding crack cocaine and marijuana, a few months before January 26, 2008.[2] Investigator Geske also had information that Triana would trade drugs for guns.

Investigator Geske took no action on the informant's tip until the following Monday, January 28th, when he received a call from Kerrville Police Department Corporal Harold Engstrom Jr. Corporal Engstrom told Geske Triana had been arrested that morning for driving with an invalid license and possession of marijuana, and that Triana claimed to be living at the Whitten with Hoffman. Both men knew Hoffman as Triana's girlfriend or common-law wife. Investigator Geske testified he shared with Corporal Engstrom what the confidential informant had told him two days earlier. Corporal Engstrom explained that in his experience, it was common for people dealing drugs out of a motel room or their residence to leave a stash of drugs behind if they are out making a delivery. He testified dealers prefer not to carry all their narcotics with them, and noted Triana did not have any crack cocaine in his possession when he was arrested. The two officers agreed to meet at the Whitten

to determine whether Hoffman was there and whether she would allow them to search the room for narcotics.

Approximately one hour after Triana's arrest, Engstrom and Geske met with the manager of the Whitten at the motel. She informed them Hoffman worked at the Whitten and was provided room 242 as part of her compensation. The manager confirmed Triana was staying at the motel, and she escorted the officers to room 242, which was located on the second floor at the rear of the Whitten.

When the group was about twenty yards away from the room, Hoffman walked out of the room and appeared to speak with someone on the ground level. Hoffman had her back to the group, but soon turned around and made eye contact with the manager and the two officers. Corporal Engstrom was wearing his police uniform. He testified Hoffman had "a look of panic" on her face and "bolted back into the room" "as fast as she could," leaving the door open. Both officers moved quickly to the doorway of room 242, with Corporal Engstrom in the lead. Investigator Geske testified he was concerned for his safety because of Hoffman's actions and his knowledge that Triana would trade drugs for guns. Corporal Engstrom testified when he arrived at the front door he saw Hoffman standing over the toilet flushing it. Investigator Geske testified he could not see Hoffman because his view was blocked by Corporal Engstrom, but he heard the toilet flushing as they arrived at the door of the room. Investigator Geske stated neither officer entered the room until after they heard Hoffman flushing the toilet. Both men testified the front door and the door to the bathroom were

1. During the hearing, the Whitten Motel was described variously as a hotel or motel. The doors of the rooms apparently open to an exterior walkway.

2. The case resulting from that search was pending indictment at the time of trial.

left wide open. After seeing Hoffman and hearing the flushing, Corporal Engstrom and Investigator Geske entered the room, and Corporal Engstrom pushed Hoffman away from the toilet. He reached into the toilet and retrieved a baggie. It was later determined the baggie contained crack cocaine.

Corporal Engstrom testified he had participated in the execution of numerous search warrants where drugs were retrieved from toilets. He further testified that after seeing Hoffman standing over the toilet and flushing it, he entered the room because he feared she was destroying evidence. Investigator Geske also testified he thought Hoffman was destroying evidence and stated it was uncommon for a person to see him with a motel manager and then "immediately run into the room and flush the toilet."

The trial court ultimately granted the motion to suppress and signed findings of fact and conclusions of law. The only finding made by the trial court was that "[a]ll witnesses were credible and testified truthfully." The court concluded that "based on the totality of the circumstances, law enforcement lacked sufficient probable cause to enter the motel room" and "an exigency that required an immediate entry into said motel room without a warrant did not exist."

### APPLICABLE LAW

Because the trial court found the only witnesses who testified—Investigator Geske and Corporal Engstrom—to be "credible and truthful," we review the application of the law to the facts *de novo.* *See Carmouche v. State,* 10 S.W.3d 323, 327 (Tex.Crim.App.2000). Both probable cause and exigent circumstances must have existed for the search to pass muster under the Fourth Amendment. *See Gutierrez v. State,* 221 S.W.3d 680, 685–86

(Tex.Crim.App.2007). "Probable cause to search exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime will be found." *Estrada v. State,* 154 S.W.3d 604, 609 (Tex.Crim. App.2005). In reviewing the evidence, we consider the "totality of the circumstances" known to the police at the time of the search. *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The circumstances supporting a finding of probable cause may include flight or similar evasive conduct. *See United States v. Macias,* 546 F.2d 58, 61 (5th Cir.1977) (holding officers had probable cause to search vehicle that made u-turn to avoid checkpoint and appeared to be "loaded down"); *Pyles v. State,* 755 S.W.2d 98, 109 (Tex.Crim.App.) (holding fact that appellant immediately turned and started walking in opposite direction when confronted by police officer was factor to be considered in determining existence of probable cause to believe he was attempting to flee after committing offense), *cert. denied,* 488 U.S. 986, 109 S.Ct. 543, 102 L.Ed.2d 573 (1988); *see also Illinois v. Wardlow,* 528 U.S. 119, 122, 124–5, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (holding defendant's unprovoked flight from area of heavy narcotic trafficking after noticing uniformed officers provided reasonable suspicion to detain and stating, "[h]eadlong flight—wherever it occurs—is the consummate act of evasion: It is not necessarily indicative of wrongdoing, but it is certainly suggestive of such"). The circumstances may also include attempts to discard or conceal items. *See United States v. Wadley,* 59 F.3d 510, 512–13 (5th Cir.1995); *Arnold v. State,* 831 S.W.2d 556, 559 (Tex.App.-Austin 1992, pet. ref'd). Courts also consider the experience of the officers involved because conduct that appears innocent to a

causal observer may carry an entirely different message to a trained, experienced police officer. *Segura v. State*, 826 S.W.2d 178, 182 (Tex.App.-Dallas 1992, pet. ref'd).

In determining whether probable cause exists, we are instructed to use a common-sense approach:

> As the Court frequently has remarked, probable cause is a flexible, common-sense standard. It merely requires that the facts available to the officer would "warrant a man of reasonable caution in the belief," *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925), that certain items may be contraband or stolen property or useful as evidence of a crime; it does not demand any showing that such a belief be correct or more likely true than false. A "practical, nontechnical" probability that incriminating evidence is involved is all that is required. *Brinegar v. United States*, 338 U.S. 160, 176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949). Moreover, our observation in *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981), regarding "particularized suspicion," is equally applicable to the probable cause requirement:
>
> > "The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same-and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement."

*Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Therefore, if one probable explanation of a set of circumstances "as understood by those versed in the field of law enforcement" is that a crime is being committed, probable cause exists. *See State v. Cullen*, 227 S.W.3d 278, 285 (Tex.App.-San Antonio 2007, pet. ref'd) (Hilbig, J., concurring) (stating "under the proper standard for determining the existence of probable cause, even though there may be a number of explanations offered to account for an officer's observations, the pertinent question is whether one of those explanations is that the person was committing an offense"). That there may be an innocent explanation for the set of facts does not defeat a finding of probable cause:

> [T]herefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens demands ... In making a determination or probable cause the relevant inquiry is not whether particular conduct is "innocent" or "guilty" but the degree of suspicion that attaches to the particular types of non-criminal acts."

*Eisenhauer v. State*, 678 S.W.2d 947, 954 (Tex.Crim.App.1984) (quoting *Gates*, 462 U.S. at 243 n. 13, 103 S.Ct. 2317), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681 (Tex.Crim.App.1991).

If probable cause is present, exigent circumstances justifying a warrantless search exist if "the police could reasonably have concluded that evidence would be destroyed or removed before they could obtain a search warrant." *McNairy v. State*, 835 S.W.2d 101, 107 (Tex.Crim.App.1991). As acknowledged by the majority, the same facts used in the probable cause analysis may be relied upon in determining exigent circumstances. *See Parker v.*

*State,* 206 S.W.3d 593, 601 (Tex.Crim.App. 2006).

### ANALYSIS

In reaching its conclusion that Investigator Geske and Corporal Engstrom did not have probable cause to search, the majority fails to consider all the information known to the officers before they entered Hoffman's room. In reaching its conclusion, the majority cites only the following facts argued by the State: (1) Triana lived at the Whitten; (2) Triana was a known drug dealer or user; and (3) Hoffman was Triana's wife or girlfriend. *Hoffman v. State,* Nos. 04–08–00614–CR & 04–08–00615–CR, 293 S.W.3d at 637 (Tex. App.-San Antonio May 13, 2009). However, the following facts were also known to the police:

- Investigator Geske received information from a confidential informant that Triana was selling crack cocaine from the "rear" of the Whitten two days before officers went there to speak to Hoffman. The informant had been providing Geske information about Triana on an ongoing basis and the information had always been accurate[3];

- Triana told the officer who arrested him he was living at the Whitten with Hoffman;

- Triana did not have any crack cocaine in his possession when arrested;

- The investigators arrived at the Whitten approximately one hour after Triana was arrested;

---

3. The majority discounts the information from the confidential informant because he received the information from a third party whose reliability was unknown to the investigators. *See Hoffman v. State,* Nos. 04–08–00614–CR & 04–08–00615–CR, 293 S.W.3d at 634 (Tex.App.-San Antonio May 13, 2009).

- The manager at the Whitten told investigators Hoffman worked at the motel and was provided a room as part of her compensation. The manager confirmed Triana was staying at the motel;

- Hoffman's room was located at the rear of the motel;

- When Hoffman saw the officers she had a "look of panic" upon on her face and "bolted" into her room "as fast as she could" before officers even indicated they were there to speak with her;

- Hoffman did not close the room door or the bathroom door; and

- Corporal Engstrom saw Hoffman standing over the toilet while flushing it.

Further, the trial court heard, and found credible and truthful, the following testimony about the officers' training and experience:

- Drug dealers using a motel room will often not keep their entire stash of drugs on them when making deliveries away from the room, but will use the room as a storage place;

- It is common for people to attempt to dispose of drugs by flushing them when they are aware of the presence of police;

- Corporal Engstrom had participated in the execution of numerous search warrants where drugs were retrieved from toilets; and

- Investigator Geske testified it was "uncommon" for someone to see him and then immediately run into a room and flush the toilet.

However, even if we consider the information as an anonymous tip, such a tip, when "coupled with observations by police may ultimately present ... probable cause." *See Turner v. State,* 261 S.W.3d 129, 134 (Tex.App.-San Antonio 2008, no pet.).

Although the majority acknowledges the State's argument that the investigators' training and experience led them to believe Hoffman's conduct was indicative of criminal behavior, it appears the majority did not afford this evidence any weight. *See Segura,* 826 S.W.2d at 182 ("[w]hen determining probable cause, we must take into account the experience of the peace officer.").

The majority concludes the State's argument that there was probable cause to search is "unpersuasive" because the police acknowledged they did not have probable cause when they arrived at the Whitten; police suspicions centered on Triana, who was already in custody; and police had no specific information that Hoffman possessed drugs. *Hoffman v. State,* Nos. 04–08–00614–CR & 04–08–00615–CR, 293 S.W.3d 633 (Tex.App.-San Antonio May 13, 2009). However, these facts alone do not encompass the "totality of the circumstances" and are not determinative of the issue of probable cause.

Triana may have been the focus of the investigation, but another aspect of the investigation was to determine whether drugs were present in his room at the Whitten. Triana's known history of drug dealing, the informant's tip, the fact Triana did not have crack cocaine on him when he was arrested, and the officers' experience led them to reasonably believe Triana may have left crack cocaine in his motel room. Although none of the information provided by the informant pointed to Hoffman individually, his information coupled with Triana's admission that he lived with Hoffman at the Whitten certainly brought her into the sphere of suspicion. That suspicion grew stronger after the police arrived at the Whitten and the manager confirmed Triana was staying there with Hoffman, and that Hoffman's room was in the rear of the motel. Hoffman's panicked look when she saw the investigators and her immediate flight into the room added weight to the investigators' suspicion there were drugs in the room. *See Wardlow,* 528 U.S. at 124–25, 120 S.Ct. 673. Seconds later, Hoffman was standing over the toilet in the room, flushing it. It is this act of destroying or disposing of some object within seconds of seeing the police that tips the facts in favor of probable cause.

Two cases illustrate this point. In *Wadley,* the court considered whether probable cause existed to search a person police encountered in a housing project known for a "high incidence of drugs transactions." 59 F.3d at 512. Without having any information linking Wadley to drugs, police approached him on the street and attempted to ask him questions. *Id.* at 511. Wadley ran from the police and during the chase an officer observed Wadley reach into his jacket pocket "as though he wanted to dispose of something hidden in the pocket." *Id.* The Fifth Circuit concluded that Wadley's presence in an area known for drug transactions, coupled with his act of running from the officers, his apparent attempt to dispose of something during the chase, and the officer's testimony that drug suspects will often attempt to dispose of drugs while being chased were sufficient facts to constitute probable cause. *Id.* at 512–13. In *Arnold,* the Austin Court of Appeals considered whether probable cause existed to search a matchbox. 831 S.W.2d at 557. In that case, police encountered the defendant in front of a location known for drug trafficking. *Id.* Arnold appeared startled when he saw the police and hurried into a nightclub. *Id.* Police followed him into the club and saw Arnold attempting to hide a matchbox behind a machine. *Id.* The police testified Arnold had a prior arrest for cocaine and that matchboxes are commonly used to carry drugs. *Id.* While noting Arnold's location, his actions upon seeing the police,

and police knowledge of Arnold's association with drugs, the court highlighted his concealment of the matchbox in concluding there was probable cause:

> Most importantly, the officer's suspicions [about drugs in the matchbox] were confirmed when he saw appellant trying to hide or dispose of the matchbox behind the game machine. Under the circumstances, a reasonably prudent and cautious police officer would be justified in believing that appellant would not go to such trouble if the box contained only matches.

*Id.* at 559.

The majority contends *Wadley* and *Arnold* are distinguishable, and therefore inapplicable, because the searches or seizures in those cases occurred in public places rather than a private residence. *Hoffman v. State,* Nos. 04–08–00614–CR & 04–08–00615–CR, 293 S.W.3d 633 (Tex. App.-San Antonio May 13, 2009). However, the location of the search or seizure is of no moment in the probable cause determination. Location is important only in determining whether exigent circumstances are required for entry into a particular place without a warrant. *See Parker v. State,* 206 S.W.3d 593, 597 (Tex. Crim.App.2006) (holding that State must prove exigent circumstances justifying immediate need to enter residence without warrant); *Janicek v. State,* 634 S.W.2d 687 (Tex.Crim.App.1982) (holding that in every warrantless entry into private residence State has burden to demonstrate that exigencies of situation made entry imperative).

### CONCLUSION

In the present case, the facts observed by and known to the investigators as they stood at the door of room 242, together with the knowledge gained from their training and experience, would have "warrant[ed] a man of reasonable caution in the belief" that Hoffman was attempting to destroy evidence or dispose of contraband. *See Brown,* 460 U.S. at 742, 103 S.Ct. 1535; *see also Wadley,* 59 F.3d at 512–13; *Arnold,* 831 S.W.2d at 559. It is of no moment that there may be an innocent explanation for Hoffman's conduct. *See Eisenhauer,* 678 S.W.2d at 954; *Cullen,* 227 S.W.3d at 285. Because one probable explanation, based on the totality of the circumstances and viewed or understood in light of the experience of the investigators, was that there was contraband in the room and Hoffman was attempting to dispose of it, the investigators had probable cause to enter the room and search the toilet. Both the trial court and the majority erred by concluding otherwise. The facts that establish probable cause in this case also led the investigators to the reasonable conclusion that evidence would be destroyed before they could obtain a search warrant. Accordingly, there were exigent circumstances justifying a warrantless search. *See Parker,* 206 S.W.3d at 601; *McNairy,* 835 S.W.2d at 107.

For these reasons, I must disagree with the majority and conclude the trial court abused its discretion in ruling the investigators had no probable cause or exigent circumstances when they entered Hoffman's room. I would uphold the search and reverse the trial court's order granting the motion to suppress.